ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
LISA E. FELDMAN (Cal. Bar No. 130019)
Assistant United States Attorney
Cyber & Intellectual Property Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-0633
    Facsimile:  (213) 894-0141
    E-mail:     lisa.feldman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JOHN WINSTON BOONE,<br>  aka "John Smith,"<br>  aka "Justin Winabali,"<br>  aka "John Greene,"<br>  aka "John King,"<br>  dba "HS Consortium, Inc.,"<br>  dba "American Blog, Inc.,"<br>  dba "Great Ideas, LLC,"<br><br>    Defendant. | No. CR 12-1014-ABC<br><br>GOVERNMENT'S POSITION SUPPORTING REVOCATION OF BOND; EXHIBITS<br><br>HEARING DATE:  7-8-13<br>HEARING TIME:  1:30 p.m.<br>Location:      Courtroom of the Hon. Audrey B. Collins |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Lisa E. Feldman, hereby files its brief in support of revocation of bond.

    This brief is based upon the attached memorandum of points and authorities, the attached exhibits[1], the files and records in this

---

[1] As noted below, with the exception of Exhibits 5 and 9, all of the attached exhibits are true and correct copies of documents that

case, and such further evidence and argument as the Court may permit.

Dated: July 2, 2013            Respectfully submitted,

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

            /s/ *signature*
LISA E. FELDMAN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

---

have been previously bates-stamped and produced to defendant during discovery in this federal case (Exhibits 2-4 and 6-8) or are pleadings filed by the Court (Exhibit 1).  Exhibits 5 and 9 are true and correct copies of documents that were recently provided to the government by the Santa Clara District Attorney's Office and have not been previously produced in this case.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On October 16, 2012, an indictment was filed charging defendant with nine counts of wire fraud, in violation of 18 U.S.C. § 1343. The Indictment alleges that defendant engaged in an Internet fraud scheme in which he fraudulently sold website domain names and associated content to the victim-purchasers after providing the victim-purchasers with falsified financial records, including fabricated PayPal records, purportedly reflecting past advertising revenue generated by the websites for sale. The victims of the scheme either wire transferred the funds to accounts controlled by defendant, or paid defendant via cashier's check. Although the Indictment relates to two of the victims who reside in the Central District of California, the evidence shows that defendant's Internet fraud scheme involved a total of approximately 18 victims throughout the United States, and those victims sustained a combined total actual loss of approximately $1.3 million.

On November 30, 2012, defendant, who lives in the Northern District of California, made his initial appearance in federal court in San Francisco, during which he was released on a $100,000 appearance bond with various terms, including conditions that he be subject to electronic monitoring at the direction of Pretrial Services and that he shall not access the Internet. (A copy of this order is attached hereto as Exhibit 1).

On June 19, 2013, the Pretrial Services Office in Los Angeles filed a petition with the Court alleging violations of defendant's conditions of release and requesting an Order to Show Cause Hearing to determine if defendant should remain on bond. In her letter to

the Court, the Pretrial Services Officer advised that a state search warrant was executed at defendant's residence on June 12, 2013, which revealed that defendant had been using the Internet, and further that defendant has repeatedly violated the rules of his electronic monitoring. In light of these violations and the other information set forth in the letter, the PSO has advised the government that it is recommending that defendant's bond be revoked.

The government strongly concurs with the PSO's recommendation to revoke defendant's bond for an additional significant reason: before defendant was arrested and placed on federal supervision in this case, but <u>after</u> the FBI executed its search warrant at defendant's residence on July 20, 2010, in this case -- and thus, while knowing he was under federal criminal investigation for wire fraud -- defendant is alleged to have embezzled over $78,000 from his then employer, Ricoh and soon thereafter, after being fired from Ricoh, he allegedly committed another fraud against a subsequent employer, Casto Travel. Equally disturbing, the evidence shows that while knowing he was also under investigation by state authorities for the Ricoh embezzlement, defendant (through his attorney) provided a district attorney's office investigator with a fabricated email purportedly from his then Ricoh supervisor approving the payments he allegedly embezzled. The Santa Clara D.A.'s Office has charged defendant with felony grand theft for the Ricoh embezzlement and also with preparing false documentary evidence for submitting the fabricated email, and has informed the government that the recent search warrant executed at defendant's residence was done in connection with the Casto Travel fraud allegations.

Defendant's prior criminal history of fraud and perjury, his alleged fraudulent conduct even <u>after</u> the FBI search warrant was executed at his residence, and his repeated violations while on federal pretrial release demonstrate defendant's arrogance, lack of remorse, and shocking disregard for the criminal justice system. For all these reasons, the government believes that defendant will continue to violate the terms and conditions of pretrial release and therefore respectfully requests that defendant's bond be revoked.

II. **ALTHOUGH PRIOR TO FEDERAL SUPERVISION, THE EVIDENCE SHOWS THAT DEFENDANT COMMITTED MULTIPLE FRAUDS AFTER THE FEDERAL SEARCH WARRANT WAS EXECUTED AT HIS RESIDENCE IN JULY 2010**

A. <u>The FBI Search Warrant on July 20, 2010</u>

On July 20, 2010, FBI agents executed a search warrant at defendant's residence in Novato, California. (A copy of the search warrant and inventory is attached hereto as Exhibit 2, BS 170-180[1]). The warrant cover page specifically authorizes a search by the "Federal Bureau of Investigation" for "criminal violation(s) of Title 18, United States Code, Section(s) 1343," and the first paragraph of Attachment B specifically states that the statute refers to wire fraud. (Ex. 2, BS 173). The attached "Description of Items To Be Seized" also makes clear that the investigation related to the fraudulent purchase and/or sale of Internet websites and that defendant was the focus of the investigation.[2]

---

[1] "BS" refers to the bates-stamp number on the document, indicating it was previously produced in discovery in this case. The attached exhibits have been further redacted for this filing to protect witness names and confidential identification information.

[2] For example, the second paragraph of Attachment B specifically authorizes the seizure of "Items believed to be inside the premises and curtilage, including the person of John Winston Boone," which left no doubt that the investigation focused on defendant. (Exhibit 2, BS 173). The Description of Items to be

3

Defendant was present and opened the door for the agents when they arrived, and a copy of the search warrant and inventory listing defendant's name was left on a table in the residence. (A copy of the FBI report of the execution of the search warrant is attached hereto Exhibit 3, BS 503-504).[3]

B. **Defendant's Alleged Embezzlement of $78,295 from Employer Ricoh from January 2011 Through July 2011**

According to investigative reports prepared by state agents in the Rapid Enforcement Allied Computer Team ("REACT", a regional high tech task force) (copies of which are attached hereto as Exhibits 4 and 6, BS 1062-1077), defendant subsequently committed the following fraud against his then employer, Ricoh Innovations ("Ricoh"): In 2011, while employed as Ricoh's Manager of Information Technology, defendant intercepted legitimate invoices from a company called GoGrid, an outside firm that handled Ricoh's IT services, and replaced them with forged invoices showing a much higher charge, deposited monies paid by Ricoh for the forged invoices into defendant's Bank of America account, paid the legitimate invoices with his own credit card and retained the difference. (Ex. 4, BS 1062-1069).

---

Seized goes on to specify "the purchase and/or sale of any Internet website between April 2005 to the present" (Item No. 5) and lists defendant's aliases (Item No. 2), defendant's email addresses (Item No. 3), Internet domain names defendant had offered for sale (Item No. 4), websites defendant had used to advertise the sale of such domain names (Item No. 6), and defendant's companies (Item No. 7). (Id.)

[3] The warrant was filed under seal and thus, a copy of the supporting affidavit was not provided to defendant at that time. (It has since been produced to defendant in discovery.)

In reviewing documents obtained by Bank of America, Ricoh, and GoGrid, the investigating task force agent determined that:

- Defendant had opened a Bank of America business checking account as "Social Media, Inc.Org" doing business as "GoGrid.Org"; two credit cards were associated with the account, including a credit card ending in 2349.

- Between January 12, 2011 and July 12, 2011, GoGrid sent to Ricoh legitimate invoices totaling $16,487.77, showing its true address. Given his role at Ricoh, these invoices came to defendant's desk. Defendant paid these invoices with his Visa card ending in 2349.

- Between January 12, 2011 and July 28, 2011, defendant submitted forged invoices to Ricoh showing the GoGrid name, but instead listing an address on Chestnut Street in San Francisco that defendant controlled ("defendant's Chestnut Street address"). Based on these invoices, Ricoh (unwittingly) issued checks for these invoices payable to GoGrid and reflecting defendant's Chestnut Street address, totaling $94,783.37, which were sent to defendant's Chestnut Street address and deposited into defendant's GoGrid.Org account at Bank of America.

- The difference between the two (i.e. what GoGrid actually billed Ricoh and what Ricoh paid GoGrid through defendant) is $78,295.60 (the amount of defendant's embezzlement).

(Ex. 4, BS 1066-1069, 1074).

C. **On June 26, 2012, Defendant (Through his Attorney) Provided Santa Clara D.A. Investigator with Fabricated Email During Criminal Investigation of Ricoh Embezzlement**

Defendant was terminated by Ricoh in August 2011 and evidence shows that REACT task force agents began investigating the Ricoh embezzlement in approximately November 2011. Defendant acknowledged he took the money, but he claimed that he was operating a consulting firm and that the difference in the amounts ($78,285) was his "consulting fee." (Ex. 4, BS 1063).

On November 4 and November 8, 2011, Task Force Agent ("TFA") Nick Muyo left messages for defendant's attorney regarding the Ricoh case. (Ex. 4, BS 1066). On November 22, 2011, TFA Muyo received a return call from defendant's new attorney, and during the call, the agent summarized the Ricoh criminal investigation and stated he believed there was good documentary evidence of the crime. (Id.)

On January 31, 2012, defendant's attorney called TFA Muyo and advised he had located a possible defense witness in the case. (Ex. 4, BS 1067). On March 16, 2012, the defense attorney called TFA Muyo and provided the name and phone number of the witness, who the agent thereafter interviewed (but who did not support defendant's claim). (Ex. 4, BS 1068-69).

On June 26, 2012, defendant's attorney wrote a letter to Hung Ledang, an Investigator at the Santa Clara District Attorney's Office, stating that the payments were consulting fees to defendant and that this subcontracting arrangement "was authorized by individuals who were in the management of Ricoh at the time the arrangements were made." (A copy of counsel's letter with enclosures is attached hereto as Exhibit 5).[4] Among other documents, the letter enclosed a copy of an email, dated December 6, 2010, from defendant's then-supervisor at Ricoh, purportedly approving the consulting fee arrangement. The email, containing the Subject line "GOGRID SUPPORT," stated:

//
//

---

[4] This document was recently obtained from the Santa Clara District Attorney's Office and has not been previously produced in this case.

> John,
>
> As agreed in the last DC selection meeting, we do not have the resources in house to manage the entire cloud infrastructure. As such, the Gogrid consulting option is approved. We still need an option to manage the online infrastructure 24/7.
>
> Let's review your hiring plan during staff meeting next week.
>
> **I will be traveling back to Asia for three weeks so let's move quickly.**
>
> [first name redacted]
>
> [first name redacted] Whitsett
> Ricoh-EPT Director of Operations
> 2077 Gateway Place, Suite 200
> San Jose, CA   95110
> [phone number redacted]

(Ex. 5, DA BS 448; bold emphasis added)[5].

However, as set forth in a supplemental investigative report, task force agents later determined from interviews with Whitsett and Ricoh IT staff that the email was fabricated and apparently cobbled together from earlier emails Whitsett had sent defendant; indeed, Whitsett was already in Asia on December 6, 2010. (A copy of the supplemental report is attached hereto as Exhibit 6, BS 1075-1077).[6]

---

[5] This is the bates-stamp used by the DDA; this document was recently obtained by the government and not previously produced.

[6] Whitsett stated that he did not give defendant permission to be a consultant. Whitsett reviewed the email and said that although the header was correct, <u>at the time the email was allegedly sent to Boone on December 6, 2010, Whitsett was already in Asia; he had left on November 28, 2010 and did not return until December 9, 2010.</u> (Ex. 6, BS 1076). In addition, Ricoh IT stated that all of Whitsett's "sent emails" for seven months prior to January 2011 were deleted, and that it did not find the email in either Whitsett's sent folder or defendant's inbox, and the email was not in the server archives for either Whitsett or defendant and it was not in the archives in Whitsett's laptop, even though there were other emails from that date located. (Ex. 6, 1076-1077).

### D. Defendant's Alleged Fraud Against Subsequent Employer Casto Travel in December 2011

The evidence shows that after being terminated from Ricoh, defendant continued to commit fraud, this time against his new employer, Casto Travel. In a lengthy civil complaint filed by Casto Travel on January 9, 2013 (a copy of which is attached hereto as Exhibit 7), Casto alleges the following, among many other things: On October 3, 2011, Casto hired defendant as its Vice President of Information. In this role, he was assigned to revamp the Singles Travel Company website by hiring the best and most cost effective web design service to do the job. Defendant represented that he had retained a company called "Social Media Design Group" for the job and on or about December 1, 2011, defendant submitted an $11,500 invoice to Casto to pay Social Media Design Group for the work. Defendant said he would deliver the check to a representative of Social Media Design Group. (Ex. 7, BS 2152-2153).

Casto issued a check payable to **Social Media Inc.Org**, the payee designated by defendant for the purported services -- and the exact account name of defendant's Bank of America business checking account used in the Ricoh fraud, as referenced above. (Ex. 7, BS 2153-2154). Unbeknownest to Casto, defendant had created the forged invoice, he was the owner of Social Media Design Group, and he deposited the forged check into his Bank of America account. (Id.) Equally significant, defendant allegedly submitted the forged invoice in December 2011, i.e. the month after his defense attorney spoke with TFA Muyo on November 22, 2011 about the Ricoh criminal investigation and thus, defendant must have known by then that he was being criminally investigated for the Ricoh embezzlement. (Ex.

7, BS 2158; Ex. 4, BS 1066). While the Casto allegations are civil, it is also significant that the alleged conduct is similar to the conduct alleged in the Ricoh felony charges (i.e. forged invoices), as well as the federal case (forged PayPal records), and the same bank account was used to deposit the illegal proceeds. Moreover, the Santa Clara District Attorney's Office has advised the government that the search warrant executed at defendant's residence on June 12, 2013 was in connection with a criminal investigation relating to the Casto allegations.

E. **State Charges Filed in Connection with Ricoh Fraud**

On April 25, 2012, the Santa Clara District Attorney's Office filed a three-count felony criminal complaint charging defendant with grand theft, forgery and using personal identifying information without authorization. (A copy of the felony complaint, obtained from the Santa Clara District Attorney's Office, is attached hereto as Exhibit 8, BS 1078-1079.)[7]

On or about March 20, 2013, the Santa Clara District Attorney's Office filed a felony information adding new charges, including Count 15 charging the crime of "preparing false documentary evidence" between June 20, 2012 and October 12, 2012, relating to the creation of the fraudulent Ricoh email submitted to the D.A. Investigator during the course of its criminal investigation. (A copy of the 15-count information is attached hereto as Exhibit 9.)

---

[7] The Santa Clara District Attorney's Office has advised the government that defendant was not arrested on the criminal complaint until on or about July 17, 2012, so defendant may not have been aware that the complaint had been filed when he sent the fabricated email. Nevertheless, there is no doubt he was aware of the Santa Clara criminal investigation being conducted and indeed, he provided the email to his attorney in connection with that investigation.

## III. CONCLUSION

The government believes that based on the attached exhibits, the evidence shows that after the federal search warrant was executed at defendant's residence in July 2010, he has committed a pattern of fraud against two employers and the Santa Clara District Attorney's Office. The evidence also shows that some of this fraud was committed while defendant was also aware that he was the subject of a criminal investigation relating to the Ricoh case. Defendant's repeated violations of pretrial release in his federal case as outlined by the violation letter from Pretrial Services, in light of his pattern of fraudulent conduct as described above and his prior criminal history, shows a shocking disregard for the criminal justice system and therefore, the government respectfully requests that defendant's bond be revoked.

Dated: July 2, 2013          Respectfully submitted,

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

          /s/
LISA E. FELDMAN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA