# EXHIBIT 1

CR12-1014UA

| UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA | ORDER SETTING CONDITONS OF RELEASE AND APPEARRANCE BOND | DATE 11/30/12 | CASE NUMBER 3-12-71265 |
|---|---|---|---|

| NAME OF DEFENDANT John Winston Boone | ADDRESS OF DEFENDANT **FILED** | TELEPHONE NUMBER |
|---|---|---|

| NAME OF SURETY | RELATIONSHIP TO DEFENDANT | ADDRESS OF SURETY NOV 3 0 2012 | TELEPHONE NUMBER |
|---|---|---|---|

| NAME OF CUSTODIAN | RELATIONSHIP TO DEFENDANT | ADDRESS OF CUSTODIAN RICHARD W. WIEKING CLERK, U.S. DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA | TELEPHONE NUMBER |
|---|---|---|---|

| AMOUNT OF BOND $100,000 | ☒ UNSECURED BY | ☐ SECURED BY $ | ☐ DEPOSIT RECEIVED RECEIVED FROM: | OTHER SECURITY POSTED TO BE POSTED BY: | TIME/DATE OF NEXT APPEARANCE 12/7/12 | COURTROOM/JUDGE 1:00 m |
|---|---|---|---|---|---|---|

## CONDITIONS OF RELEASE AND APPEARANCE

Defendant is subject to each condition checked.

☒ Defendant shall appear at all proceedings as ordered by the Court and shall surrender for service of any sentence imposed.

☒ Defendant shall not commit any federal, state, or local crime.

☒ Defendant shall not harass, threaten, intimidate, injure, tamper with, or retaliate against any witness, victim, informant, juror, or officer of the Court, or obstruct any criminal investigation. See 18 U.S.C. 1503, 1510, 1512, and 1513, on reverse side.

☐ Defendant shall not travel outside the Northern District of California, that is, these counties; Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, San Francisco, San Mateo, Santa Clara, Santa Cruz, and Sonoma. See map on reverse side.

☒ Defendant shall report in person immediately upon release and thereafter as directed to Pretrial Services in _San Francisco_ See addresses and telephone numbers on reverse side.

☐ Defendant shall surrender all passports and visas to Pretrial Services by _____ and shall not apply for any passports or other travel documents.

☐ Defendant shall not possess any firearm, destructive device, or other dangerous weapon.

☐ Defendant shall remain in the custody of custodian _____ at _____ who agrees to supervise him/her and to report any violation of a release condition to Pretrial Services. A custodian who fails to do so may be prosecuted for contempt.

☐ Defendant shall participate in (drug) (alcohol) (mental health) counseling, and submit to (drug) (alcohol) testing, as directed by Pretrial Services.

☐ Defendant shall not use alcohol to excess and shall not use or possess any narcotic or other controlled substance without a legal prescription.

☐ The Defendant shall maintain current verifiable employment, or if unemployed, the defendant shall seek employment or commence an educational program as directed by Pretrial Services.

☐ Defendant shall submit to a warrantless search of his/her person, place of residence and vehicle at the direction of Pretrial Services.

☐ Defendant shall have no contact with any co-defendant out of the presence of counsel.

☐ Defendant shall not change residence without prior approval of Pretrial Services.

☐ Defendant shall comply with the following curfew: _____ to _____ at the direction of PTJ

☒ Defendant shall be subject to electronic or voice track monitoring. Defendant may leave home for the purpose of _____

☐ Defendant must ☐ reside in Halfway House _____ ☐ participate in Residential Treatment _____

☒ The following conditions also apply:

- DEFENDANT SHALL NOT ACCESS THE INTERNET
- DEFENDANT SHALL APPEAR ON 12/7/12 at 1:00 pm IN THE DUTY MAGISTRATE COURT at the ROYBAL FEDERAL BLDG., 255 EAST TEMPLE, 3RD FL., Los ANGELES, CA

Defendant shall contribute to the cost of services provided by Pretrial Services as directed by Pretrial Services.

## CONSEQUENCES OF DEFENDANT'S FAILURE TO OBEY CONDITIONS OF RELEASE

Payment of the full amount of this bond shall be due forthwith, and all cash or property posted to secure it shall be forfeited. Judgment may be entered and executed against defendant and all sureties jointly and severally.

An arrest warrant for defendant shall issue immediately, and defendant may be detained without bail for the rest of the proceedings.

Defendant shall be subject to consecutive sentences and fines for failure to appear and/or for commiting an offense while on release. See 18 U.S.C. 3146 and 3147, on reverse side.

We, the undersigned, have read and understand the terms of this bond and acknowledge that we are bound by it until duly exonerated.

| SIGNATURE OF DEFENDANT John W. Boone | SIGNATURE(s) OF SURETY(ies) John W. Boone |
|---|---|
| SIGNATURE OF CUSTODIAN | |

| THIS ORDER AUTHORIZES THE MARSHAL TO RELEASE DEFENDANT FROM CUSTODY. ▶ | SIGNATURE OF MAGISTRATE JUDGE | DATE 11/30/12 |
|---|---|---|

1-CLERK OF COURT-WHITE COPY

EXHIBIT 1

# EXHIBIT 2

AO 93 (Rev. 5/85) Search Warrant

# United States District Court

__NORTHERN__ DISTRICT OF __CALIFORNIA__

In the Matter of the Search of
(Name, address or brief description of the person or property to be searched))

103 Maybeck Street, Novato, California

**SEARCH WARRANT**

CASE NUMBER:

UNDERSEAL   3  10  70638  **MEJ**

TO: __Federal Bureau of Investigation__ and any Authorized Officer of the United States

Affidavit(s) having been made before me by __Special Agent Jonathan S. Holmes__ who has reason to
Affiant

believe that ☐ on the person of or ☑ on the premises known as (name, description and/or location)

103 Maybeck Street, Novato, California, as further described in Attachment A

in the _Northern_ District of _California_ there is now
concealed a certain person or property, namely (describe the person or property)

See Attachment B

which constitutes evidence, fruits, and instrumentalities
(state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rule of Criminal Procedure)

of a criminal violation(s) of Title _18_ , United States Code, Section(s) 1343
I am satisfied that the affidavit(s) and any record testimony establish probable cause to believe that the person or property
so described is now concealed on the person or premises above-described and establish grounds for the issuance of this
warrant.
YOU ARE HEREBY COMMANDED to search on or before _7/29/10_
                                                                    Date
(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and
making the search  (in the daytime--6:00 A.M. to 10:00 P.M.) (at any time in the day or night as I find reasonable cause
has been established), and if the person or property be found there to seize same, leaving a copy of this warrant and
receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly
return this warrant to _Duty Magistrate Judge_ as required by law.
                              U.S. Judge or Magistrate Judge

_7/19/10 @ 1601_                    at _San Francisco, CA_
Date and Time Issued                         City and State

__Nandor J. Vadas, U.S. Magistrate Judge__
Name and Title of Judicial Officer            Signature of Judicial Officer

**EXHIBIT 2**

**000170**

AO 93 (Rev. 2/80) Search Warrant

## RETURN

| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH |
|---|---|---|

INVENTORY MADE IN THE PRESENCE OF

INVENTORY OF PERSON OR PROPERTY TAKEN PURSUANT TO THE WARRANT

## CERTIFICATION

I swear that this inventory is true and detailed account of the person or property taken by me on the warrant.

_____

Subcribed, sworn to, and returned before me this date.

_____        _____
                    U.S. Judge or Magistrate                              Date

**ATTACHMENT A**

**DESCRIPTION OF PREMISES TO BE SEARCHED**

**103 Maybeck Street, Novato, California, 94949**

The premises to be searched is 103 Maybeck Street, Novato, California  94949.  The premises is a single family detached residence that is gray in color with white trim.  The residence is located on Maybeck Street in Novato, California.   The residence has a single attached garage.  The garage door is located in the front of the residence facing a northbound direction.  The address number "103" is located above and to the left of the garage door if the viewer is facing the house.  The front door of the residence is located to the right of the garage door if the viewer if facing the residence.  The front door is dark in color, with four glass windows located near the top of the door, and also faces a northern direction.  The residence has a single step up to the front door.

The area to be searched includes the premises described above, including rooms, attics, basements, porches, locked containers and safes, and other parts therein, as well as the surrounding grounds and driveway, any garages, carports, storage rooms, storage lockers, trash containers, and outbuildings specifically associated with, or assigned to, the premises described above, and any vehicles parked on the property or in the driveway specifically associated with, or assigned to, the premises, as well as the person of John Winston Boone.

1

**ATTACHMENT B**

**DESCRIPTION OF ITEMS TO BE SEIZED:**

Evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 1343 (wire fraud) including:

Items believed to be inside the premises and curtilage, including the person of John Winston Boone, located at 103 Maybeck Street, Novato, California 94949, described in Attachment A:

1. All computers, cellular telephones, Blackberry devices, or any other electronic device which may be used to connect to the Internet and send or receive emails (all of which are suspected to constitute instrumentalities of the crime), including, but not limited to, a Gateway laptop computer;

2. All records, documents, and materials relating to "John Smith," "Justin Winabali" and "John Greene;"

3. All records, documents, and materials relating to jsmithsites@gmail.com, thegreatsites@gmail.com, topgreatideas@gmail.com, sell.website@gmail.com and john@americanblog.com;

4. All records, documents, and materials related to www.financeblog.org, www.moneyblog.org, www.saltlakecity.org, www.nflblog.org, www.americanblog.org, www.[U.S. State]blog.org, www.celladnetwork.com, and www.artistblog.org;

5. All records, documents, and materials relating to the purchase and/or sale of any Internet website between April 2005 to the present;

6. All records, documents, and materials relating to www.Bizquest.com, www.BizbuySell.com or www.BizBen.com;

7. All records, documents, and materials relating to or reflecting Paypal records generated between April 2005 and the present;

8. All records, documents, and materials relating to American Blog, HS Consortium, and Great Idea(s);

9. All currency, including but not limited to US Currency and European Currency, in excess of $1,000;

1

000173

10.   All records, documents, and materials showing control, possession, custody, dominion or other indicia of occupancy over the SUBJECT PREMISES, or digital media found in the SUBJECT PREMISES, including but not limited to:  personal mail, checkbooks, personal identification, personal effects, notes, other correspondence, utility and other bills, internet service provider documents, letters, rent receipts, mortgage and loan documents, financial documents, vehicle registration information or ownership warranties, keys, or photographs (developed or undeveloped); and

11.   For the time period April 2005 to the present:  Bank account records, wire transfer records, bank statements, safe deposit box keys and records, money containers, financial records and notes showing payments, credits, debits, receipts, concealment, transfer, or movement of money generated from the fraudulent sale of websites.

12.   Any and all computers, computer hardware, electronic or magnetic storage devices, such as floppy diskettes, hard disks, backup tapes, CD-ROMs, CD-Rs, CD-RWs, DVD-ROMs, DVD-Rs, DVD+Rs, DVD-RWs, DVD+RWs, optical discs, printer buffers, smart cards, USB thumb drives, USB drives, USB Flash Memory, Firewire Devices, Smart Media, Memory Sticks, Multimedia Cards (MMC), Secure Digital Cards, memory calculators, electronic dialers, Bernoulli drives, electronic notebooks, personal digital assistants, and any data, image or information that is capable of being read or interpreted by computer;

13.   Hardware and software operating manuals, tape systems and hard drive and other computer related operation equipment, digital cameras, scanners, computer photographs, printouts of computer photographs, Graphic interchange formats and/or photographs, and other visual depictions of such Graphic interchange formats (including, but not limited to, JPG, GIF, TIF, AVI and MPEG); notations of any passwords that may control access to a computer operating system or individual computer files;

14.   Any input/output peripheral devices, including but not limited to passwords, data security devices and related documentation;

15.   Any network devices to include routers and switches, which are assigned a Media Access Control (MAC) address, a unique number associated with a network adapter and is unique to each computer.  A MAC address is burned onto the router during manufacturing and is thus impossible to remove or change.  Each MAC address is 12 characters in length, the first six characters contain the ID number of the manufacturer, and the last six numbers represent the serial numbers assigned to the adapter by the manufacturer.

2

Definitions Applying to Search and Seizure of Computers

    a.   Records, Documents and Materials

      The terms "records," "documents," and "materials" include all of the items described in this Attachment in whatever form and by whatever means they may have been created and/or stored. This includes handmade, photographic, mechanical, electrical, electronic (including e-mail, computer files, Internet histories, bookmarks and all other electronic items that may be found on computer hardware in any form), and/or magnetic forms. It also includes items in the form of computer hardware, computer software, computer documentation, passwords, and/or data security devices.

    b.   Computer Hardware

      Computer hardware consists of all equipment which can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical, or similar computer impulses or data. This includes any data-processing devices (such as central processing units, memory typewriters, and self-contained "laptop" or "notebook" computers); internal and peripheral storage devices (such as fixed disks, external hard disks, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, transistor-like binary devices, and other memory storage devices); peripheral input/output devices (such as keyboards, printers, scanners, plotters, video display monitors, and optical readers); related communication devices (such as routers, modems, cables, and connections, recording equipment, RAM or ROM units, acoustic couplers, automatic dialers, speed dialers, programmable telephone dialing or signaling devices, and electronic tone-generating devices); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (such as physical keys and locks).

    c.   Computer Software

      Computer software is digital information which can be interpreted by a Computer and any of its related components to direct the way it works. Software is stored in electronic, magnetic, optical, or other digital form. It commonly includes programs to run operating systems, applications (like word-processing, graphics, or spreadsheet programs, utilities, compilers, interpreters, and communications programs).

    d.   Computer-related Documentation

      Computer-related documentation consists of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, software, or other related items.

000175

1

        e.   Computer Passwords and Other Data Security Devices

2

            Computer passwords and other data security devices are designed to
3   restrict access to or hide computer software, documentation, or data.  Data
    security devices may consist of hardware, software, or other programming code.
4   A password (a string of alpha-numeric characters) usually operates as a sort of
    digital key to "unlock" particular data security devices.  Data security hardware
5   may include encryption devices, chips, and circuit boards.  Data security software
6   or digital code may include programming code that creates "test" keys or "hot"
    keys, which perform certain pre-set security functions when touched.  Data
7   security software or code may also encrypt, compress, hide, or "booby-trap"
    protected data to make it inaccessible or unusable, as well as reverse the process
8   to restore it.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

**000176**

## ATTACHMENT C

### POST-CDT PROTOCOL FOR SEARCHING DEVICES OR MEDIA THAT STORE DATA ELECTRONICALLY

1.    In executing this warrant, the government must begin by ascertaining  whether all or part of a search of a device or media that stores data electronically (collectively, the "device") that is authorized by this warrant reasonably can be completed at the site within a reasonable time.  If the search reasonably can be completed on site, the government will remove the device from the site only if authorized by law because removal is (1) necessary to preserve evidence, or (2) if the item is contraband, a forfeitable instrumentality of the crime, or fruit of crime.

2.    If the government determines that a reasonable search as authorized in this warrant cannot be completed at the site within a reasonable period, the government must determine whether all or part of the authorized search can be completed by making a mirror image of, or in some other manner duplicating, the contents of the device and then completing the search of the mirror image off site (e.g., at a computer crime laboratory).

3.    The government may remove from the search location a device only if the device cannot be searched reasonably on site, or by mirror-imaging or otherwise duplicating its contents for off site examination -- unless authorized by law to remove the device because (1) removing the device is necessary to preserve evidence, or (2) the device is contraband, a forfeitable instrumentality of the crime, or fruit of crime.  The government also may remove from the site any related equipment (e.g., keyboards or printers) or documents (e.g., system operating or software manuals) that reasonably appear to be necessary to conduct an off-site search of a device in which data is stored electronically.

4.    If the government removes a device or related equipment or documents from the place they were found in order to complete the search off-site, within ten calendar days of the removal the government must file a return with a magistrate judge that identifies with particularity the removed device or related equipment or documents.

1

**000177**

5.    The government must complete an off-site search of a device that agents removed in order to search for evidence of crime, as promptly as practicable and no later than 30 calendar days after the initial execution of the warrant.  The government must complete an off-site search of any mirror image of any device in which data is stored electronically as promptly as practicable and no later than 120 calendar days after the initial execution of the warrant.  Within thirty calendar days after completing an off-site search of a device pursuant to this warrant, the government must return any device, as well as any related equipment or document that was removed from the site in order to complete the search, unless, under the law, the government may retain the device, equipment, or document (1) to preserve evidence, or (2) because the device, equipment, or document is contraband, a forfeitable instrumentality of the crime, or fruit of crime.  Within a reasonable period, not to exceed sixty calendar days after completing the authorized search of a device or image, the government also must use reasonable efforts to destroy – and to delete from any devices or storage media or copies that it has retained or made – copies of any data that are outside the scope of the warrant but that were copied or accessed during the search process, unless, under the law, the government may retain the copies (1) to preserve evidence, or (2) because the copies are contraband, a forfeitable instrumentality of the crime, or fruit of crime.  The deadlines set forth in this paragraph may be extended by court order for good cause shown.

6.    In conducting the search authorized by this warrant, whether on site or off site, the government must make all reasonable efforts to use methods and procedures that will locate and expose only those categories of files, documents, or other electronically stored information that are identified with particularity in the warrant while, to the extent reasonably practicable, minimizing exposure or examination of irrelevant, privileged, or confidential files.

7.    The terms of this warrant do not limit or displace any person's right to file a motion for return of property under F.R.Cr.P. 41(g).  Nor does the issuance of this warrant preclude any person with any interest in any seized item from asking the government to return the item or a copy of it.

8.    The government must promptly notify the judge who authorized issuance of the search warrant (or, if that judge is unavailable, to the general duty judge) if a dispute arises about rights or interests in any seized or searched item – or any data contained in any searched or seized item – and that dispute cannot be resolved informally.  The government must deliver a copy of this written notification to any person known to assert any such right or interest.

9.    Except as provided below, all search, review, and/or forensic analysis of the data on any device or mirror image authorized to be searched by this warrant (1) shall be conducted only by law enforcement  personnel or other government personnel or retained forensic examiners who are not involved in the investigation of the crimes described in the affidavit (the "filter team"), and (2) shall be conducted using search protocols directed exclusively to the identification, segregation and extraction of data within the scope of this warrant.  The filter team will not communicate to the law enforcement personnel, retained examiners and experts, prosecutors and any others involved in the investigation of the crimes described in the affidavit (the "investigating team") any information learned during the analysis that is outside the scope of the warrant, but may communicate to the investigating team any information or data that is

2

**000178**

within the scope of the warrant. In the event that a member of the filter team identifies information pertaining to crimes outside the scope of the warrant, such information will not be disclosed to the investigating team or used in any way absent further judicial authorization or unless a new warrant is obtained to search for such information. A new warrant may be sought by a member of the filter team, if he or she is a sworn federal agent, or by an agent not part of the investigating team. A federal prosecutor apart from the investigating team will be assigned to assist in determining whether to apply for a new warrant and in obtaining such a warrant. Absent a new warrant, the filter team will only search for and seize data that they would be entitled to retain independent of the new information and the investigating team will not use any data outside the scope of this warrant even if found in plain view absent further judicial authorization.

3

**000179**

FD-597 (Rev 8-11-94)                                                    Page ___1___ of ___1___

UNITED STATES DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF INVESTIGATION
Receipt for Property Received/Returned/Released/Seized

File # 196E - LA - 253712

On (date) 7/20/10

item(s) listed below were:
- ☐ Received From
- ☐ Returned To
- ☐ Released To
- ☑ Seized

(Name) John Boone

(Street Address) 103 Maybeck

(City) Novato  CA

Description of Item(s):

1~ John Boone Visa Card - 6702   John King Pay Pal Card - 3158
2- LG Cell phone and charger -V66100
3- Deposit Records "Great Ideas llc"
4- John/christie Checkbook
5- Maxtor Harddrive 260 GB SN ~xnr B425SaEH
6- Western Digital HD SN WXNX08NW2857
7- Torn documents found in trash
8- Various documents and Verizon mail
9- DVD associated with American Blog and other Blogs
10- Documents associated with american Blog and Great Ideas
11- Documents Associated with Great Ideas and American Blog
12- CDR's associated with Great Ideas
13- Toshiba laptop, HD SN 89934404P Toshiba Laptop HD SN X2H42554T
14- Two (2) Sandisk Thumbdrives Blackberry Storm SN RBW71Cw
15- Samsung cell SN 297CFFA
16- John Boone Paypal 2359 Blackberry 8530 SN RCL21CW
17- Documents related to American Blog
18- Gateway laptop 7320 SN N345171048020
19- Gateway laptop W650I SN 1102211341
20- Gateway Model 0x200x SN 0036267212

Received By: _____          Received From: - WAS NOT PRESENT -
                (Signature)                                (Signature)

**000180**

# EXHIBIT 3

FD-302 (Rev. 10-6-95)

- 1. -

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription    07/21/2010

     Pursuant to a federal search warrant issued by the Northern District of California authorizing the search for evidence, fruits and instrumentalities showing violations of Title 18, USC 1343 - wire fraud, Special Agents (SAs) of the FBI executed the warrant at 103 Maybeck Street, Novato, CA.

     At approximately 7:15 A.M., agents knocked on the door to 103 Maybeck Street and announced their identities and purpose. John Boone, date of birth ▮▮▮▮▮▮▮▮▮▮▮▮, opened the door and agents subsequently entered the residence. While securing the residence, agents encountered coinhabitant, Jenny Smith, date of birth ▮▮▮▮▮▮▮▮▮▮▮▮, and two house guests, ▮▮▮▮ and ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮▮▮▮▮ were temporarily staying at the residence while waiting to attend a basketball tournament in Las Vegas, NV. Also present while the residence was secured were two uniformed Novato police officers.

     After the residence was secured at approximately 7:22 A.M., entry photos were taken, a sketch depicting the basic layout of the search site was drawn, and a preliminary survey was conducted.

     The search began after the entry photos were taken. The following is a list of search personnel and their specific duties.

     SA Binh Pham - Search, photo log.
     SA Jon Sorenson - Search, administrative log.
     SA Jon Chinn - Search, Sketch.
     SA Chris White, Evidence log.
     SA Gabe Gunderson - Search, search team leader.
     SA Hans Frank - Search, photographer
     SA Don Serrao - Search
     SA Mark Hammell - Search
     SA Denise Gaztambide - Search
     SA Jonathan Holmes - Search
     SA Jeffrey Moon - Search

     Upon completion of the search, a copy of the search warrant and a copy of the FD-597, listing all items seized from the residence, were left on a table in the residence. Exit photos were taken including a photograph of the FD-597 alongside a copy of the

| | | |
|---|---|---|
| vestigation on | 07/20/2010 | at Dublin, California |

le # ▮▮▮▮▮▮▮▮▮▮         Date dictated  Not Dictated

SAs Sorenson:js, Chinn, Pham, Frank, Gaztambide, Hammell, Moon,
by  Gundersen, White, Serrao, Holmes

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

000503

EXHIBIT 3

FD-302a (Rev. 10-6-95)



Continuation of FD-302 of _____ Search of 103 Maybeck Street _____ , On 07/20/2010 , Page ___2___

search warrant.  At approximately 10:25 A.M., all search personnel
exited the residence.

    A sketch of the residence, not drawn to scale, was made
by SA Chinn.  Digital photos were taken by SA Frank with the
corresponding photo logs recorded by SA Pham.  Where it was
appropriate, individual evidence items were photographed.  All
photos (on a CD), photo log, sketch, evidence log, and
administrative log, are included in the 1A portion of this case
file.

# EXHIBIT 4



**Rapid Enforcement Allied Computer Team (R.E.A.C.T.)**

North Office ~ 1650 S. Amphlet Blvd. #213, San Mateo, CA 94402 Phone 650-655-1060
South Office ~ 3130 De La Cruz Blvd. #209, Santa Clara, CA 95054 Phone 408-282-2420

## INVESTIGATION REPORT

Case No: **2011-0057**

| Defendant: BOONE, John Winston | Crime Type: 487(a) P.C. |
|---|---|

**Suspect:**

BOONE, John Winston
~~████████████~~
Sausalito, CA, 94965
BMA, 6-0, 240, brn-brn
DOB: ████████ CDL: ████████

**Summary:**

During 2011, suspect John Boone, while employed at Ricoh, intercepted legitimate invoices from a company (GoGrid) doing business with Ricoh, replaced them with forged invoices, deposited monies paid by Ricoh for the forged invoices into his Bank of America account, paid the legitimate invoices with his own credit card, and retained the difference.

**Investigation:**

**9/6/2011 Tuesday:**

Task Force Supervisor Sgt. Ronnie Lopez assigned me this case.

**9/8/2011 Thursday:**

At 1004 hours, I drove to the Ricoh company to interview Witness ██████ Bartz. During the interview, he gave me copies of Human Resource (HR) materials and information that suspect Boone gave to HR when he got hired. Bartz pointed out the Chestnut Street address in San Francisco (SF) and said that it looked as though Boone had three different residences, one that possibly belonged to a girlfriend.

Bartz said that when Ricoh learned of the theft by Boone, they had their lawyer draft and send a letter to Boone in an attempt to handle the matter civilly. Bartz said that company executives in Tokyo didn't want it resolved civilly. He said that the letter was sent to Boone's attorney, Leo Cunningham (Refer to the letter, attached). He said that the letter detailed Boone's activities.

| Agent: TFA Nick Muyo #30 | Page: 1 of 10 | Date: 4/11/2012 |
|---|---|---|



**Rapid Enforcement Allied Computer Team (R.E.A.C.T.)**

North Office ~ 1650 S. Amphlet Blvd. #213, San Mateo, CA 94402  Phone 650-655-1060
South Office ~ 3130 De La Cruz Blvd. #209, Santa Clara, CA 95054  Phone 408-282-2420

| **INVESTIGATION REPORT** | Case No: **2011-0057** |
|---|---|

| Defendant: BOONE, John Winston | Crime Type: 487(a) P.C. |
|---|---|

According to the letter, "... Boone intercepted the legitimate invoices from GoGrid, replaced them with forged invoices, deposited monies paid by Ricoh for the forged invoices in his Bank of America account, paid the legitimate invoices by credit card, and retained the difference."

Bartz continued. Invoices were sent to John Boone from a company called GoGrid. They went directly to Boone's desk. Boone would replace legitimate invoices with altered invoices. He would get a check issued with his Chestnut Street address, made out to GoGrid. They learned that when checks finally got to the bank, the checks were not endorsed. GoGrid admitted to Ricoh that they do not have a Bank of America account. Boone would pay a valid invoice from GoGrid with his (Boone's) credit card number. Bartz knew this to be Boone's credit card because Boone used the same credit card to register domain names.

Bartz said that Ricoh eventually shut down the GoGrid operation. They then checked invoices from GoGrid against what Boone was claiming he received from GoGrid and discovered a difference of **$78,295.60.** Bartz said that Ricoh demanded that Boone pay this amount by last Friday (9/2/2011). Bartz said that Ricoh has not been paid by Boone. Bartz said that last week, Boone's attorney contacted Ricoh's attorney, Sid Friedman, and Cunningham acknowledged that Boone did, in fact, take the money. Friedman acknowledged that Boone does not have the money to pay back "right now" and wanted to discuss some kind of payment plan. Bartz said, "We don't want an IOU."

Boone's position was that he was operating a consulting firm and that the difference in the amounts was his "consulting fee." According to Bartz, "We at least have him acknowledging that he took the money."

Bartz said that there were examples attached in the packet of information he gave to me to illustrate what Boone was doing. He said that there was a payment summary attached. He said that there were twelve (12) events which had faked invoices and the checks that Boone issued to pay them. He said that examples #13-#21 show valid invoices from GoGrid and how they were paid. He said that GoGrid should also be able to show that the invoices were paid with John Boone's credit cards.

Another packet of information highlights events #1-12. Bartz said that an invoice would come to Boone. Boone would then request payment, after signing the invoice. This was called a "vendor request for payment." The packet also contained copies of the checks and included examples of valid Ricoh checks. Bartz said that all of these were physically handed to Boone for payment. None of the checks are endorsed. Bartz said that, in some cases, they have e-mails requesting payment.

| Agent: TFA Nick Muyo #30 | Page: 2 of 10 | Date: 4/11/2012 |
|---|---|---|



### Rapid Enforcement Allied Computer Team (R.E.A.C.T.)

North Office ~ 1650 S. Amphlet Blvd. #213, San Mateo, CA 94402  Phone 650-655-1060
South Office ~ 3130 De La Cruz Blvd. #209, Santa Clara, CA 95054  Phone 408-282-2420

## INVESTIGATION REPORT                        Case No: **2011-0057**

| Defendant: BOONE, John Winston | Crime Type: 487(a) P.C. |

Bartz said that events #13-21 are copies of material from GoGrid, showing what was paid and what was charged. Bartz said that there were four accounts held with GoGrid. He said that, "We never saw a copy of any contracts with GoGrid. We asked Boone for paperwork and he never showed us any of them (contracts)." Boone was terminated in August 2011. Bartz said that **$15,587** was actually paid to GoGrid (A spreadsheet provided to Ricoh by GoGrid would later show this figure to be $16,487.77). Bartz said that GoGrid uses Comerica and that they actually prefer getting payments by wire.

I asked Bartz about the connection between Ricoh and GoGrid. He said that Ricoh's IT resources were farmed out to GoGrid. He said that the fees were so expensive, compared to other companies, that they decided to close the GoGrid account. They began using another company. John Boone, Ricoh's manager of IT, was responsible for everything. There was no one to do any check and balances on Boone. Bartz said that Ricoh contacted GoGrid for copies of their contracts (with Ricoh), but they have been reluctant to produce any documents.

I asked Bartz if he had a contact at GoGrid. He said that the name was included in the information packet and that it was a ▉▉ Goodshaw."

Bartz confirmed that Boone knows what's going on. He said that Boone's attorney contacted Ricoh last Tuesday, although Bartz has not talked to Boone since he left. He doesn't know what Ricoh's e-mail storage policy is, but added that he would be happy to get us any e-mail references about GoGrid.

Bartz said that Ricoh believes Cunningham is trying to separate himself from Boone. He said that he had been pushing for a civil resolution, but added again that Japanese executive staff wants a criminal prosecution. He said that after the payment demand deadline passed last Friday, they (executive staff) are happy to pursue/cooperate with a criminal prosecution.

I asked Bartz to explain the domain name issue for me. He said that Ricoh has been in product development on a new item. Ricoh has been trying to protect news of its release. Ricoh wanted to secure domain names in preparation of the product release. Boone came on board around this time and it was Boone who registered the domain names. Boone convinced Ricoh to register the domain names under Boone's name, "so that he could hide them and they wouldn't show as Ricoh domain names. Bartz said that Boone used a company called "Domain by Proxy." This company hides the domain owners' name. In essence then, there would have been no reason for Boone to register the domains under his name, since the owners were protected anyway. Bartz believes that Boone "cyber squats" on domain names. Bartz believes that Boone has over 140 domain names. According to Bartz, Ricoh has a "patent invention agreement" with all of their employees, which means

| Agent: TFA Nick Muyo #30 | Page: 3 of 10 | Date: 4/11/2012 |



**Rapid Enforcement Allied Computer Team  (R.E.A.C.T.)**

North Office ~ 1650 S. Amphlet Blvd. #213, San Mateo, CA 94402  Phone 650-655-1060
South Office ~ 3130 De La Cruz Blvd. #209, Santa Clara, CA 95054  Phone 408-282-2420

| INVESTIGATION REPORT | Case No: **2011-0057** |
|---|---|

| Defendant:  BOONE, John Winston | Crime Type:  487(a) P.C. |
|---|---|

that "anything you create while working at/for Ricoh, belongs to Ricoh. We shouldn't have to pay extra for it."

Bartz said that Ricoh did a background check on Boone. He said that Boone has information in almost every county in the bay area and that there are civil judgments against him. He said that Boone also has a felony perjury conviction. He believes that Symantec corporation fired him.

Bartz said that Boone still has company property in his possession, in the form of two laptops and a hard drive. Boone claims that he left the property at the Decathlon Club, because Ricoh's General Manager is a member there. The General Manager contacted the Decathlon Club but was told that nothing was left there for him.

Bartz said that he would provide me with a list of company property, believed to still be in Bone's possession.

**Suspect Background:**

Bartz gave me a copy of material from Boone's Human Resource file at Ricoh, information provided to Ricoh by Boone. That information included:

A photocopy of Boone's CDL ▓▓▓▓▓▓which lists the identifying information and address shown above;

A photocopy of Boone's Social Security card showing a number of ▓▓▓▓▓▓

An "Employee Information Form" lists a home phone of ▓▓▓▓▓▓and a home address of **2269 Chestnut Street**, Suite 269, San Francisco, CA;

The "Primary Contact" on this form is identified as a "partner" named Jenny C. Smith, living at ▓▓▓▓▓▓

Jenny C. Smith has listed phone numbers as ▓▓▓▓▓▓(work); ▓▓▓▓▓▓(home), and ▓▓▓▓▓▓(cell or pager);

The "Secondary Contact" on this form is identified as an "ex-wife" named Christine Boone, living at ▓▓▓▓▓▓

Christine Boone has listed phone numbers as ▓▓▓▓▓▓(work); ▓▓▓▓▓▓(home); and ▓▓▓▓▓▓(cell or pager);

| Agent: TFA Nick Muyo #30 | Page:  4 of 10 | Date:  4/11/2012 |
|---|---|---|

12/19/2012 12:02 FAX  408 279 8742        D  A  -E GROUP                    ☒006/014



**Rapid Enforcement Allied Computer Team  (R.E.A.C.T.)**

North Office ~ 1650 S. Amphlet Blvd. #213, San Mateo, CA  94402  Phone  650-655-1060
South Office ~ 3130 De La Cruz Blvd. #209, Santa Clara, CA  95054  Phone  408-282-2420

| INVESTIGATION REPORT | Case No: **2011-0057** |
|---|---|

| Defendant:  BOONE, John Winston | Crime Type:  487(a) P.C. |
|---|---|

His attached resume lists prior employment with HS Consortium, Inc.; GTE Internetworking
(formerly Genuity); Wine.com (formerly WineBuyer.com); Cisco Systems; and Microsoft.

**11/4/2011  Friday:**

At 1215 hours, I phoned the Law Offices of Wilson, Sonsini, Goodrich and Rosati at 650
Page Mill Road, Palo Alto, CA 94304, phone ▓▓▓▓▓▓▓▓ and left a message for Leo
Cunningham, the attorney representing John Boone in the case filed by Ricoh Innovations.

**11/8/2011  Tuesday:**

At 0920 hours, I left another message for Leo Cunningham, the attorney representing John
Boone, asking that he contact me about this case.

**11/22/2011  Tuesday:**

At 0930 hours, I returned to work to find a voice message from James Blackman.  Blackman
identified himself as a defense attorney, representing suspect John Boone.  I phoned
Blackman, who told me that he was representing John Boone.  He asked for a brief summary
of the case, which I gave him.  He then asked if there was good paper evidence against
Boone and I said that, in my opinion, there was.  He asked if I knew if Ricoh would be
interested in discussing restitution or a monetary settlement.  I said that I could find out.  He
agreed to call me early next week.

**1/27/2012  Friday:**

In a review of material provided by Ricoh, I discovered the following:

A legitimate GoGrid invoice #1139239, dated 5/5/2011, for $1,497.98, from GoGrid
LLC, showing an address of 360 Spear Street, Suite 200, San Francisco, CA 94105,
phone 866-321-7284, fax 415-869-7001;

A forged GoGrid invoice #101141, dated 4/11/2011, for $2,462.78, from GoGrid LLC,
but showing an address of **2269 Chestnut Street**, Suite 239, San Francisco, CA
94105, phone 415-869-7000, fax 415-358-8630;

Check 12942, dated 4/15/2011, for $2,462.78, from Ricoh to GoGrid LLC at the **2269
Chestnut Street** address in San Francisco, deposited into a Bank of America account
on 4/20/2011;

| Agent:  TFA Nick Muyo #30 | Page: 5 of 10 | Date: 4/11/2012 |
|---|---|---|

12/19/2012 12:03 FAX   408 279 8742          R A - E GROUP                              ☒ 007/018



**Rapid Enforcement Allied Computer Team (R.E.A.C.T.)**

North Office ~ 1650 S. Amphlet Blvd. #213, San Mateo, CA 94402  Phone 650-655-1060
South Office ~ 3130 De La Cruz Blvd. #209, Santa Clara, CA 95054  Phone 408-282-2420

## INVESTIGATION REPORT

Case No: **2011-0057**

| Defendant: BOONE, John Winston | Crime Type: 487(a) P.C. |

A spreadsheet showing payment and invoice records provided to Ricoh by GoGrid, totaling **$16,487.77**, between 4/12/2011 and 7/12/2011, and paid by Visa;

A spreadsheet showing payment and invoice records from Ricoh to John Boone's address, totaling **$94,783.37**, between 1/12/2011 and 7/28/2011, and paid by check;

The difference between the two spreadsheets (what GoGrid billed Ricoh and what Ricoh paid GoGrid through Boone) is **$78,295.60** (Boone's illegal profit).

Receipts from GoGrid show payments on the Ricoh account by a Visa credit card ending in the numbers **2349**. (Search warrant returns would later confirm that Boone has a Visa card ending in 2349.)

I am preparing a search warrant for Bank of America account records for suspect John Boone.

### 1/31/2012 Tuesday:

At 0700 hours, I returned to work to find a voice message from Defense Attorney James Blackman, representing suspect John Boone.

I phoned Mr. Blackman later this morning. He explained that he had located a possible witness in this case and was hopeful that I could interview this witness.

At 1330 hours, I presented the completed search warrant and affidavit to Judge Michelle McKay McCoy. She signed the warrant.

At 1400 hours, I returned to the REACT offices and faxed the completed and signed search warrant to Bank of America's Custodian of Records.

At 1440 hours, I received a phone call from Bank of America, telling me that the search warrant needed to be personally served at any of their branches. It would then be forwarded to their Custodian of Records.

### 2/1/2012 Wednesday:

At 1000 hours, I drove to the Bank of America branch office at 2611 North First Street in San Jose. I personally served the search warrant to Branch Manager ▓▓▓▓ Rodriguez. Rodriguez faxed the search warrant to their Legal Compliance Department and, before I left, confirmed for me that the fax had been received.

| Agent: TFA Nick Muyo #30 | Page: 6 of 10 | Date: 4/11/2012 |



**Rapid Enforcement Allied Computer Team (R.E.A.C.T.)**

North Office ~ 1650 S. Amphlet Blvd. #213, San Mateo, CA 94402  Phone 650-655-1060
South Office ~ 3130 De La Cruz Blvd. #209, Santa Clara, CA 95054  Phone 408-282-2420

## INVESTIGATION REPORT

Case No: **2011-0057**

| Defendant: BOONE, John Winston | Crime Type: 487(a) P.C. |
|---|---|

### 2/14/2012 Tuesday:

At 0600 hours, I returned to work to find a FedEx package on my desk. I opened the package and discovered that it was the information from Bank of America requested via search warrant on 2/1/2012.

### 2/16/2012 Friday:

At 1100 hours, I left Defense Attorney James Blackman a phone message explaining that I was still waiting for his witness to contact me regarding this case.

### 2/21/2012 Tuesday:

At 0630 hours, I returned to work to find a voice message from Blackman. He explained that he was tied up in court on a homicide trial and was still attempting contact with his witness, who was out of town until Wednesday or Thursday.

### 3/16/2012 Friday:

At 1415 hours, I received a phone call from Mr. Blackman. He explained that his witness is the former Controller at Ricoh, a Mr. ▓▓▓▓ Weinblatt. He said that he has attempted contact with Weinblatt but finally decided to put me in contact with him. He said that I could reach Weinblatt at his new business number of ▓▓▓▓▓▓▓▓▓

### 3/20/2012 Tuesday:

At 0825 hours, I phoned Mr. Weinblatt. I left a message asking that he call me as soon as possible.

At 1100 hours, I received a call from ▓▓▓▓ Weinblatt. I explained the nature of my call and he related the following:

Weinblatt is the former Controller for Ricoh. Although he did not hire Boone, he did work with him. He said that he started at Ricoh a couple of weeks after Boone and left the company in March 2011 (Boone wasn't terminated until August 2011). He said that Boone initiated the contract with GoGrid, along with ▓▓▓▓ Whitsett.

Weinblatt said that approximately three weeks ago, Boone called him and left him at least two voice messages, asking that Weinblatt call him. During the voice messages, Boone told

| Agent: TFA Nick Muyo #30 | Page: 7 of 10 | Date: 4/11/2012 |
|---|---|---|

DEC-19-2012  11:00                    408 279 8742          04/25/2012  000106607
                                                           97%            P.008



**Rapid Enforcement Allied Computer Team (R.E.A.C.T.)**

North Office ~ 1650 S. Amphlet Blvd. #213, San Mateo, CA 94402  Phone 650-655-1060
South Office ~ 3130 De La Cruz Blvd. #209, Santa Clara, CA 95054  Phone 408-282-2420

| **INVESTIGATION REPORT** | Case No: **2011-0057** |
|---|---|

| Defendant: BOONE, John Winston | Crime Type: 487(a) P.C. |
|---|---|

Weinblatt that he was no longer working at Ricoh. He said that he also received a voice message from Boone's attorney. Weinblatt said that he has not returned either message.

Weinblatt said that GoGrid provided cloud services and storage hosting for Ricoh. He said that he recalled that there was some kind of delay in getting GoGrid's first payment to them. He specifically recalled that Boone told Ricoh that he needed to get GoGrid paid and that Boone said that since Boone was visiting GoGrid in a couple of days, Ricoh should give the GoGrid payment to Boone, who would then deliver it to GoGrid.

I asked Weinblatt if there was any reason why Boone would either ask for or receive payment over and above what was asked for on the GoGrid invoices. He said, "No." He also confirmed that if Boone was asking for "consulting fees," any and all services and/or fees should have been articulated on a receipt (X-amount of dollars for hardware; X-amount of dollars for services; X-amount of dollars for consulting; etc.).

Weinblatt said that if Boone was receiving "consulting fees" while working for Ricoh, he believes that it would have been a violation of company policy.

**3/23/2012 Friday:**

At 0630 hours, a review of the Bank of America records and Ricoh and GoGrid documents revealed the following:

Bank of America records show that John Boone opened a business checking account as "Social Media, Inc.Org," doing business as **"GoGrid.Org."**

Bank of America records show that there are two charge cards associated to the account. One card is 6▩▩▩▩▩▩ and the other is ▩▩▩▩2349.

GoGrid, through legitimate invoices, and Ricoh, through company checks issued to John Boone, identify 27 transactions between January 12, 2011 and July 14, 2011. These transactions identify **$16,487.77** paid to GoGrid and **$94,783.37** paid to John Boone, for a difference of **$78,295.60.**

All of these transactions are confirmed through Bank of America records as a result of the search warrant executed earlier.

Hard copies of the transactions are included in this case file, as well as an attached spreadsheet for review.

| Agent: TFA Nick Muyo #30 | Page: 8 of 10 | Date: 4/11/2012 |
|---|---|---|



**Rapid Enforcement Allied Computer Team (R.E.A.C.T.)**

North Office ~ 1650 S. Amphlet Blvd. #213, San Mateo, CA 94402  Phone 650-655-1060
South Office ~ 3130 De La Cruz Blvd. #209, Santa Clara, CA 95054  Phone 408-282-2420

| INVESTIGATION REPORT | Case No: **2011-0057** |
|---|---|

| Defendant: BOONE, John Winston | Crime Type: 487(a) P.C. |
|---|---|

### 3/23/2012 Friday:

At 0755 hours, I attempted phone contact with ▓▓▓Goodshaw at GoGrid. I left a message asking that he contact me regarding this case. Goodshaw is a contact identified by ▓▓▓ Bartz who might have knowledge of the contracts, if any, with John Boone.

### 4/3/2012 Tuesday:

At 0815 hours, I once again attempted phone contact with ▓▓▓ Goodshaw at GoGrid. It should be noted that when I attempted contact with Goodshaw on 3/23/2012, his name was in the company directory and I used the automated system to leave him a message. When I called back this morning, his name was NOT in the company directory. I left a message with Human Resources, asking for a call back.

### 4/10/2012 Tuesday:

At 0810 hours, I phoned GoGrid and contacted someone in the Customer Services department. "Debbie" confirmed for me that ▓▓▓ Goodshaw is no longer with GoGrid, having left the company approximately 2-3 weeks ago. She gave me two names as contacts for the Ricoh account, ▓▓▓ Tam and ▓▓▓ Zavlaris.

At 0845 hours, I e-mailed both gentlemen, asking that they contact me about this case.

### 4/11/2012 Wednesday:

At 1256 hours, after conferring with their legal department and with ▓▓▓ Bartz at Ricoh, ▓▓▓ Tam e-mailed me copies of the contracts that GoGrid had with Ricoh-EWS (See attached). A review of those contracts revealed the following:

The first contract lists "two items." Page 1 expires on 2-21-2011 and was signed for on 2-7-2011 by Ricoh's Vice President of Operations, ▓▓▓ Whitsett. John Boone is listed on the contract as the "contact." The contract is for an 8-core dedicated server. Page 2 expires on 2/18/2011 and was also signed for on 2/7/2011 by ▓▓▓ Whitsett. This contract is for a firewall, cloud services, a server, data transfer plan, and 16 I.P. addresses.

Contract Two expires on 2/11/2011 and was signed for by John Boone on 2/2/2012. It, too, is for an 8-core dedicated server and lists John Boone as the point of contact.

| Agent: TFA Nick Muyo #30 | Page: 9 of 10 | Date: 4/11/2012 |
|---|---|---|



**Rapid Enforcement Allied Computer Team  (R.E.A.C.T.)**

North Office ~ 1650 S. Amphlet Blvd. #213, San Mateo, CA  94402   Phone  650-655-1060
South Office ~ 3130 De La Cruz Blvd. #209, Santa Clara, CA  95054   Phone  408-282-2420

| INVESTIGATION REPORT | Case No: **2011-0057** |
|---|---|

| Defendant: BOONE, John Winston | Crime Type: 487(a) P.C. |
|---|---|

The third document expires on 1/15/2011 and was signed for by John Boone on 1/11/2011. It lists John Boone as the contact and is for a firewall, cloud services, a server, data transfer plan, and 16 I.P. addresses.

None of the documents list any services or contain any language showing that these contracts or services between GoGrid and Ricoh include any consulting services by either party or John Boone. All of the paperwork lists a GoGrid contact as ▓▓▓▓ Zavlaris, an account manager.


**Conclusion:**

I am referring this investigation to the Office of the District Attorney for review and consideration of filing criminal charges.


**Attachments:**

#1 Letter from Ricoh's attorney, ▓▓▓▓ Friedlander to Boone's attorney, Leo Cunningham;
#2 E-mail from Boone requesting approval for an attached GoGrid invoice #101141;
#3 Copy of forged GoGrid invoice #101141, showing Boone's home address;
#4 Copy of check #12942, from Ricoh to GoGrid, showing Boone's home address;
#5 Copy of an actual GoGrid invoice #1139239, showing the correct business address, phone and fax numbers;
#6 Spreadsheet showing payments to "GoGrid" at Boone's home address;
#7 Spreadsheet showing payments to "GoGrid" by Visa charge card;
#8 (4) pages of GoGrid contracts, provided by ▓▓▓▓Tam of GoGrid.

| Agent: TFA Nick Muyo #30 | Page: 10 of 10 | Date: 4/11/2012 |
|---|---|---|

12/19/2012 12:04 FAX 408 279 8742 _ E GROUP



**Rapid Enforcement Allied Computer Team (R.E.A.C.T.)**

North Office ~ 1650 S. Amphlet Blvd. #213, San Mateo, CA 94402  Phone 650-655-1060
South Office ~ 3130 De La Cruz Blvd. #209, Santa Clara, CA 95054  Phone 408-282-2420

| **INVESTIGATION REPORT** | Case No: **2011-0057** |
|---|---|

| Defendant: BOONE, John Winston | Crime Type: 487(a) P.C. |
|---|---|

## Suspect:

BOONE, John Winston
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Sausalito, CA, 94965
BMA, 6-0, 240, brn-brn
DOB: ▓▓▓▓▓ CDL: ▓▓▓▓▓▓

## Summary:

During 2011, suspect John Boone, while employed at Ricoh, intercepted legitimate invoices from a company (GoGrid) doing business with Ricoh, replaced them with forged invoices, deposited monies paid by Ricoh for the forged invoices into his Bank of America account, paid the legitimate invoices with his own credit card, and retained the difference.

## Investigation:

### 4/18/2012  Wednesday:

I asked Task Force Agent Marshall Norton to deliver the complaint to Deputy D.A. Jennifer Deng this afternoon.

### 4/19/2012  Thursday:

At 0933 hours, I received an e-mail from DDA Deng. She asked that I contact ▓▓▓▓ Zavlaris and ▓▓▓▓ Tam of GoGrid to get statements from them to confirm that John Boone was not contracting for them; did not have permission to use their company name as a DBA ("doing business as") and was not authorized to receive any money on GoGrid's behalf.

### 4/20/2012  Friday:

On Friday afternoon, in separate phone conversations, I spoke to ▓▓▓▓ Tam and ▓▓▓▓ Zavlaris. Both gentlemen confirmed that John Boone was contracting for Ricoh EWS and not GoGrid. They both also said that John Boone did not have permission to use GoGrid's company name, to their knowledge. Zavlaris, during our conversation, also gave me the

| Agent: TFA Nick Muyo #30 | Page: 1 of 2 | Date: 4/24/2012 |
|---|---|---|

DEC-19-2012  11:01          408 279 8742          04/25/2012  0001072011
97%                         P.012



### Rapid Enforcement Allied Computer Team (R.E.A.C.T.)

North Office ~ 1650 S. Amphlet Blvd. #213, San Mateo, CA 94402  Phone 650-655-1060
South Office ~ 3130 De La Cruz Blvd. #209, Santa Clara, CA 95054  Phone 408-282-2420

| INVESTIGATION REPORT | Case No: **2011-0057** |
|---|---|

| Defendant: BOONE, John Winston | Crime Type: 487(a) P.C. |
|---|---|

name of GoGrid company employee, ▮▮▮▮Higgins.  Higgins works in Accounts Receivable and would have worked exclusively with John Boone.

### 4/24/2012 Tuesday:

At 0800 hours, I received a phone call from ▮▮▮▮Higgins.  Higgins explained that, although he did not set up the original contract with Boone or Ricoh, it was his assignment to work with Boone to get GoGrid paid.  He confirmed that, to his knowledge, Boone did not have permission to use GoGrid's company name as a "DBA."

While on the phone with him, he also pulled up invoices that he had access to between Ricoh and GoGrid.  He said that all of the invoices he reviewed had the address of 2077 Gateway Place, San Jose.  I explained to him that Gateway Place was Ricoh's business address.  He seemed confused when I mentioned that I had GoGrid invoices with a Chestnut address in San Francisco (apparently Boone's home address) and said that there should have been no reason for any GoGrid invoices to have any other address except their business address of 360 Spear, San Francisco.

### Conclusion:

| Agent: TFA Nick Muyo #30 | Page: 2 of 2 | Date: 4/24/2012 |
|---|---|---|

| Event | Date | Invoice | Paid via | Amount | Note | Payment to GoGrid |
|---|---|---|---|---|---|---|
| 2 | 2/10/2011 | 30445 | Check 12545 to GoGrid with Boone's address | 1250.00 | Per Ricoh–EWS | |
| 4 | 3/8/2011 | 100641 | Check 12729 to GoGrid with Boone's address | 9534.78 | Per Ricoh–EWS | |
| 6 | 4/15/2011 | 101141 | Check 12942 to GoGrid with Boone's address | 2462.78 | Per Ricoh–EWS | |
| 8 | 5/13/2011 | 102007 | Check 13122 to GoGrid with Boone's address | 2462.78 | Per Ricoh–EWS | |
| 10 | 6/7/2011 | 103105 | Check 13313 to GoGrid with Boone's address | 2662.78 | Per Ricoh–EWS | |
| 12 | 7/28/2011 | 115746 | Check 20043 to GoGrid with Boone's address | 9934.78 | Per Ricoh–EWS | |
| 14 | 4/12/2011 | 1067147 | Paid via Visa card | 199.98 | Per GoGrid Records | $ 199.98 |
| 16 | 4/12/2011 | 1067152 | Paid via Visa card | 400.00 | Per GoGrid Records | $ 400.00 |
| 18 | 4/12/2011 | 1067154 | Paid via Visa card | 400.00 | Per GoGrid Records | $ 400.00 |
| 20 | 5/4/2011 | 1098108 | Paid via Visa card | 900.00 | Per GoGrid Records | $ 900.00 |
| 22 | 6/29/2011 | 1102404 | Check 13503 to GoGrid with Boone's address | 3897.98 | Per Ricoh–EWS | |
| | 7/8/2011 | 1102404 | Paid via Visa card | 3897.98 | Per GoGrid Records | $ 3,897.98 |
| 24 | 6/29/2011 | 1134081 | Check 13503 to GoGrid with Boone's address | 1160.13 | Per Ricoh–EWS | |
| 26 | 6/29/2011 | 1134980 | Check 13503 to GoGrid with Boone's address | 3897.98 | Per Ricoh–EWS | |
| | 7/12/2011 | 1134980 | Paid via Visa card | 3897.98 | Per GoGrid Records | $ 3,897.98 |
| | | | | | | $ 16,487.77 |

# EXHIBIT 5

Jun 26 12 04:31p     LAW OFFICES          (650)617-6888       p.1

Law Offices of
**JAMES W. BLACKMAN**
A Professional Corporation
2479 East Bayshore Road, Suite 703
Palo Alto, CA 94303
Phone (650) 843-1000
Fax (650) 617-6888

June 26, 2012

Via Facsimile Transmission:

Hung Ledang
Investigator
Santa Clara County
District Attorney's Office

Re:   John Boone

Dear Investigator Ledang:

This will follow-up on our recent telephone conversation respecting Mr. Boone.

Enclosed herewith please find various documents which we believe are significant. One set of document shows that the amounts paid by Ricoh and deposited in Mr. Boone's Bank of America account involved payments through PayPal to the various subcontractors providing services pursuant to the subcontract agreement.

The second set of document shows that the subcontracting agreement was authorized by individuals who were in the management of Ricoh at the time the arrangements were made.

I stand ready to review this matter with you or whoever has authority.

Thank you very much.

Very truly yours,

JAMES W. BLACKMAN

EXHIBIT 5                    08/29/2012  000000439

Jun 26 12 04:31p     LAW OFFICES          (650)617-6888          p.2

4/16/12  APR. 16. 2012  5:25PM   CABO TRAVEL History - PayPal          NO. 6073   P. 2

## All activity - Mar 17, 2010 to Apr 16, 2012

| Date | | Type | Name/Email | Payment status | Order status/Actions | Gross | Fee | Net amount |
|---|---|---|---|---|---|---|---|---|
| Aug 19, 2011 | | Payment From | EVO Media Group, Inc. | Completed | | $43.71 | -$1.57 | $42.14 USD |
| Dec 8, 2010 | | Bill From | Horizon Technologies Inc | Pending | | $360.00 | $0.00 | $380.00 USD |
| Dec 8, 2010 | | Bill From | Horizon Technologies Inc | Pending | | $600.00 | $0.00 | $600.00 USD |
| Nov 16, 2010 | | Bill From | Syenet Technology Solutions Inc | Pending | | $900.00 | $0.00 | $900.00 USD |
| Oct 2, 2010 | | Dividend From | PayPal - Money Market | Completed | | $0.01 | $0.00 | $0.01 USD |
| Sep 10, 2010 | | Debit Card ATM Withdrawal From | HAMILTON-GATE, NOVATO, CA | Completed | | -$83.00 | -$1.00 | -$84.00 USD |
| Sep 2, 2010 | | Debit Card ATM Withdrawal From | GREENBRAE, GREENBRAE, CA | Completed | | -$63.00 | -$1.00 | -$64.00 USD |
| Sep 2, 2010 | | Payment From | NorCal Supreme | Completed | | $60.00 | $0.00 | $60.00 USD |
| Sep 1, 2010 | | Dividend From | PayPal - Money Market | Completed | | $0.01 | $0.00 | $0.01 USD |
| Aug 31, 2010 | | Debit Card ATM Withdrawal From | HAMILTON-GATE, NOVATO, CA | Completed | | -$203.00 | -$1.00 | -$204.00 USD |
| Aug 28, 2010 | | Bill From | Lewis Byrd | Paid | | $784.00 | $0.00 | $784.00 USD |
| Aug 25, 2010 | | Payment To | BoonEx | Completed | | -$299.00 | $0.00 | -$299.00 USD |
| Aug 25, 2010 | | Payment For | NorCal Supreme | Completed | | -$340.00 | $0.00 | -$340.00 USD |
| Aug 25, 2010 | | Payment For | HS Consortium, Inc | Completed | | -$300.00 | $0.00 | -$300.00 USD |
| Aug 25, 2010 | | Payment From | Greg Johnson | Completed | | $1,250.00 | -$36.55 | $1,213.45 USD |
| Aug 25, 2010 | | Bill To | greg@streetball.com | Paid | | $1,250.00 | $0.00 | $1,250.00 USD |
| Aug 25, 2010 | | Bill To | greg@otbosports.com | Pending | | $1,250.00 | $0.00 | $1,250.00 USD |
| Jun 30, 2010 | | Bill From | Syenet Technology Solutions Inc | Paid | | $300.00 | $0.00 | $300.00 USD |
| May 1, 2010 | | Dividend From | PayPal - Money Market | Completed | | $0.01 | $0.00 | $0.01 USD |
| Apr 23, 2010 | | Debit Card ATM Withdrawal From | CORTE/MADERA, CORTE MADERA, CA | Completed | | -$163.00 | -$1.00 | -$164.00 USD |

08/29/2012  000000440

Jun 26 12 04:31p        LAW OFFICES          (650)617-6888        p.3

4/16/12 APR. 16. 2012  5:26PM    CASEY TRAVEL History - PayPal        NO. 6073   P. 3

## All activity - Mar 17, 2010 to Apr 16, 2012

| Date | Type | Name/Email | Payment status | Order status/Actions | Gross | Fee | Net amount |
|------|------|-----------|----------------|----------------------|-------|-----|------------|
| Mar 1, 2011 | Payment To | LuvPoint | Completed | | -$57.00 | $0.00 | -$57.00 USD |
| Feb 27, 2011 | Payment To | Pavel Ciorici | Completed | | -$89.00 | $0.00 | -$89.00 USD |
| Feb 18, 2011 | Bill To | Reginald Bailey | Pending | | $2,500.00 | $0.00 | $2,500.00 USD |
| Feb 18, 2011 | Bill To | Reginald Bailey | Pending | | $2,500.00 | $0.00 | $2,500.00 USD |
| Sep 1, 2010 | Debit Card ATM Withdrawal From | SAN RAFAEL MN, SAN RAFAEL, CA | Completed | | -$63.00 | -$1.00 | -$64.00 USD |
| Aug 31, 2010 | Debit Card ATM Withdrawal From | HAMILTON-GATE, NOVATO, CA | Completed | | -$203.00 | -$1.00 | -$204.00 USD |
| Aug 31, 2010 | Payment To | Cogzidel Technologies Pvt Ltd | Completed | | -$29.00 | $0.00 | -$29.00 USD |
| Aug 25, 2010 | Payment From | GreatIdeas LLC | Completed | | $300.00 | $0.00 | $300.00 USD |
| Jun 9, 2010 | Payment To | NorCal Suprama | Completed | | -$500.00 | $0.00 | -$500.00 USD |
| Jun 9, 2010 | Bill From | NorCal Supreme | Paid | | $500.00 | $0.00 | $500.00 USD |
| Jun 9, 2010 | Payment From | Double Pump, Inc. | Completed | | $500.00 | -$14.80 | $485.20 USD |
| May 27, 2010 | Debit Card Signature Purchase To | BIZBUYSELL 415-2844360 CA | Completed | | -$159.92 | $0.00 | -$159.92 USD |
| May 25, 2010 | Payment From | NorCal Supreme | Completed | | $150.00 | -$4.65 | $145.35 USD |
| May 25, 2010 | Bill To | NorCal Supreme | Paid | | $150.00 | $0.00 | $150.00 USD |
| May 12, 2010 | Debit Card ATM Withdrawal From | HAMILTON-GATE, NOVATO, CA | Completed | | -$143.00 | -$1.00 | -$144.00 USD |
| Apr 16, 2010 | Bill To | Russell Kramer | Pending | | $5,400.00 | $0.00 | $5,400.00 USD |
| Apr 15, 2010 | Bill To | denise8de@hotmail.com | Pending | | $4,000.00 | $0.00 | $4,000.00 USD |
| Mar 25, 2010 | Debit Card Signature Purchase To | BIZBUYBELL 415-2844360 CA | Completed | | -$199.90 | $0.00 | -$199.90 USD |
| Mar 23, 2010 | Debit Card ATM Withdrawal From | HAMILTON-GATE NOVATO CA | Completed | | -$203.00 | -$1.00 | -$204.00 USD |
| Mar 18, 2010 | Payment To | Jetimpex, Inc | Completed | | -$65.00 | $0.00 | -$65.00 USD |

08/29/2012  000000441

Jun 26 12 04:32p      LAW OFFICES          (650)617-6888        P.4

4/16/12  APR. 16. 2012  5:27PM      CA_O TRAVEL History - PayPal      NO. 6073   P. 4

## All activity - Mar 17, 2010 to Apr 16, 2012

| Date | Type | Name/Email | Payment status | Order status/Actions | Gross | Fee | Net amount |
|------|------|-----------|----------------|---------------------|-------|-----|-----------|
| Sep 2, 2010 | Payment For | GreatIdeas LLC | Completed | | -$60.00 | $0.00 | -$60.00 USD |
| Sep 2, 2010 | Bill To | Lewis Byrd | Canceled | | $175.00 | $0.00 | $175.00 USD |
| Aug 25, 2010 | Payment For | Jason Montana | Completed | | -$300.00 | $0.00 | -$300.00 USD |
| Aug 25, 2010 | Payment From | GreatIdeas LLC | Completed | | $340.00 | $0.00 | $340.00 USD |
| Jun 9, 2010 | Transfer To | Bank Account | Completed | | -$550.00 | $0.00 | -$550.00 USD |
| Jun 9, 2010 | Bill To | Jim_McGuigan@capgroup.com | Pending | | $400.00 | $0.00 | $400.00 USD |
| Jun 9, 2010 | Payment From | HS Consortium, Inc | Completed | | $500.00 | -$11.30 | $488.70 USD |
| Jun 8, 2010 | Bill To | HS Consortium, Inc | Paid | | $500.00 | $0.00 | $500.00 USD |
| Jun 1, 2010 | Transfer To | Bank Account | Completed | | -$700.00 | $0.00 | -$700.00 USD |
| Jun 1, 2010 | Payment From | Michelle Brewer | Completed | | $800.00 | -$17.90 | $782.10 USD |
| May 31, 2010 | Bill To | Michelle Brewer | Paid | | $800.00 | $0.00 | $800.00 USD |
| May 28, 2010 | Transfer To | Bank Account | Completed | | -$400.00 | $0.00 | -$400.00 USD |
| May 28, 2010 | Payment From | kevin daly | Completed | | $100.00 | -$2.50 | $97.50 USD |
| May 27, 2010 | Bill To | kevin daly | Paid | | $100.00 | $0.00 | $100.00 USD |
| May 25, 2010 | Payment From | Dennis Joyce | Completed | | $100.00 | -$2.50 | $97.50 USD |
| May 25, 2010 | Payment From | Michael Johnson | Completed | | $100.00 | -$2.50 | $97.50 USD |
| May 25, 2010 | Bill To | Dennis Joyce | Paid | | $100.00 | $0.00 | $100.00 USD |
| May 25, 2010 | Payment To | HS Consortium, Inc | Completed | | -$150.00 | $0.00 | -$150.00 USD |
| May 25, 2010 | Bill From | HS Consortium, Inc | Paid | | $150.00 | $0.00 | $150.00 USD |
| May 21, 2010 | Payment From | Robert Carr | Completed | | $100.00 | -$2.50 | $97.50 USD |

08/29/2012  000000442

**John Boone**

**Subject:**      Copy: Call to delve further into the Ricoh Innovations solution
**Location:**     Conference Bridge - 888.296.6828 -- Participant Code - 607324#

**Start:**        Thu 12/30/2010 10:00 AM
**End:**         Thu 12/30/2010 11:00 AM
**Show Time As:**   Tentative

**Recurrence:**     (none)

**Meeting Status:**   Not yet responded

**Organizer:**

Hi John,

Here is our proposed agenda for the call:

- Quick Introductions – Our CTO, Jon Greaves, will be joining the call.
- We've caught Jon up to speed with the your solution, as we understand it, thus far. Please let us know if we've missed anything:
    You've created an application to run on tablet PCs to be used at hospitals and doctor's offices for the medical staff to input patient information. The tablet PCs will connect back to this environment via https to upload that data into this hosted component (HIPAA). Therefore, IO is critical in querying the DB for the data and during the anticipated thousands of concurrent connections. You're in need of a hybrid model of cloud type vms for the web front end and dedicated db servers on the backend. HA environment needed and, in the near future, another site as DR (HOT). Along with this design, you would like to stand up Engineering, Staging and Q&A environments, as well.
- Discuss how Carpathia's model would fit Ricoh Innovation's Hosting and Compliance needs. A Carpathia solution visio will be provided just prior to the call.
- Would this gel with your current project goals? Timeline expectations?


Hi John,

After talking about your solution with Dao, I think it would make a lot of sense to introduce you to Jon Greaves, our CTO, who built our cloud platform. He would bring a lot of mindshare to the call, as he was the Chief Technologist at Sun Microsystems for a few years just before coming to Carpathia and was the CTO at Sevenspace for 4.5 years before they were bought by Sun. He's also well versed in hosting compliance, thus aiding in the HIPAA discussion. This way you two could talk shop in reference to your solution design.

08/29/2012  000000443

With that said, Thursday would be perfect for the call; however, an hour
call at 1pm or 4pm EST would work well for the Carpathia team. Would either
of those times work for you?

I will send out an agenda for the call and any questions we may already have
prior to COB today.

All the best,
Campos
Account Executive
bcampos@carpathia.com

21000 Atlantic Blvd., Suite 500
Dulles, VA 20166
Voice:
Mobile:
Fax:
<http://www.carpathia.com> www.carpathia.com

This message is for the designated recipient only and may contain
privileged, proprietary, or otherwise confidential information. If you have
received it in error, please notify the sender immediately and delete the
original. Any other use of the email by you is prohibited.

2

## John Boone

**Subject:**        GoGrid onsite meeting
**Location:**       San Jose Office

**Start:**          Wed 12/29/2010 9:30 AM
**End:**            Wed 12/29/2010 1:30 PM

**Recurrence:**     (none)

**Organizer:**

Demo and discuss cloud services

Attendees:

Peter F. (GG)
VP Sale (GG)
Michael (GG)
W. (Ricoh)
John B. (Ricoh)
Jesse L. (Ricoh)

Agenda:

1. Demo Product
2. Review Contract
3. Discuss Support
4. Multi-site support and Dashboard
5. Provisioning
6. Price

## John Boone

**Subject:**        Copy: Lunch and DC Tour
**Location:**        2 Harrison Street San Francisco CA, 94105

**Start:**          Tue 12/7/2010 12:00 PM
**End:**            Tue 12/7/2010 2:30 PM

**Recurrence:**     (none)

**Meeting Status:**

**Organizer:**

When: Tuesday, December 07, 2010 12:00 PM-2:30 PM (GMT-08:00) Pacific Time (US & Canada).
Where: 2 Harrison Street, San Francisco CA, 9410

Note: The GMT offset above does not reflect daylight saving time adjustments.

*~*~*~*~*~*~*~*~*~*

Hi John,

Hopefully, Tuesday will work for you. Let's plan to meet at our main office and head straight to lunch from there. Does that sound good?

Best Wishes,

Zavlaris

**John Boone**

**Subject:**
**Location:**
                         Copy: Go Grid Cloud discussion and Presentation
                         2077 Gateway Place, Suite 200, San Jose Ca (Conference Malibu)

**Start:**
**End:**                 Thu 12/2/2010 10:00 AM
                         Thu 12/2/2010 12:00 PM

**Recurrence:**          (none)

**Meeting Status:**

**Organizer:**

W., Sree P. Jesse L., Larry G., Mike P.

**Agenda:**
Provisioning Virtual Machines (Who owns this one?) APPROVED by
Contract SLA (Service Level Agreements) HOLD – legal review
Support Internal (Ricoh IT, and GG after hours) - APPROVED by
Support External (GoGrid Consulting) - APPROVED by
Failover plan – HOLD – waiting for Eng.
HA (High Availability test) Engineering APPROVED by Mike P

1

**From:** ▮▮▮ Whitsett [mailto:whitsett@ril.ricoh.com]
**Sent:** Monday, December 6, 2010 9:04 AM
**To:** John Boone [mailto:jboone@ril.ricoh.com]
**Cc:**
**Subject:** GOGRID SUPPORT

John

As agreed in the last DC selection meeting, we do not have the resources in house to manage the entire cloud infrastructure. As such, the Gogrid consulting option is approved. We still need an option to manage the online infrastructure 24/7.
Let's review your hiring plan during staff meeting next week.

I will be traveling back to Asia for three weeks so let's move quickly.

▮▮▮▮▮

▮▮▮▮▮ Whitsett
Ricoh-EPT  Director of Operations
2077 Gateway Place, Suite 200
San Jose, CA 95110
▮▮▮▮▮

# EXHIBIT 6



**Rapid Enforcement Allied Computer Team (R.E.A.C.T.)**

North Office ~ 1650 S. Amphlet Blvd #213, San Mateo CA 94402 Phone 650-655-1060
South Office ~ 3130 De La Cruz Blvd #209, Santa Clara CA 95054 Phone 408-282-2420

| INVESTIGATION REPORT | Case No: 2011-0057 |
|---|---|
| Defendant: John Boone | Crime Type: Grand Theft |

# Supplement Report

**Narrative:**

On 09/11/2012, I met with Deputy District Attorney Tom Flattery and he requested I conduct a follow up interview with **(INV-1)** ~~~~~~~~ Whitsett. Whitsett was employed by Ricoh, which also employed **(SUS-1)** John Boone. DA Flattery asked I speak with Whitsett to clarify the emails meaning. The email gave approval from Whitsett to Boone to use Gogrid to manage the companies "cloud infrastructures" For complete details of the email I have attached a copy below and into the case file:



**Continued Investigation:**

On 09/12/2012, I made telephone contact with **(INV-1)** Whitsett. I explained my follow up investigation and he agreed to further speak with me. The following is a summary of the information he provided:

| Agent: **TFA Martin Beltran** | Page 1 of 3 | Date: |
|---|---|---|
| F:\REACT reports\REACT Supplement Case 2011-0057 Ricoh Fraud.doc | | |

09/13/2012    000000449

EXHIBIT 

**Rapid Enforcement Allied Computer Team (R.E.A.C.T.)**

North Office ~ 1650 S. Amphlet Blvd #213, San Mateo CA  94402  Phone 650-655-1060
South Office ~ 3130 De La Cruz Blvd #209, Santa Clara CA 95054  Phone 408-282-2420

## INVESTIGATION REPORT

Case No: 2011-0057

| Defendant: John Boone | Crime Type: Grand Theft |
|---|---|

### Summary statement of (INV-1) ▓▓▓▓▓ Whitsett:

Whitsett stated he did not remember the contents of the email he sent to Boone on 12/06/2010. I read him the entire email and I asked what he meant by the approval he gave Boone. Whitsett stated the approval was for Gogrid to provide the consulting for the company's infrastructure, not Boone. The email in no way gave Boone permission to take on the consulting position. It would have been a "highly unusual practice" for Ricoh to have a full time employee takes on this task. Whitsett questioned if the email was even authentic. I sent him a copy of the email for his review.

After Whitsett reviewed the email, he stated the header was correct. At the time the email was sent to Boone, Whitsett was already in Asia. He had left on 11/28/2010 and did not return until 12/09/2010. Whitsett pointed out how he usual would sign off from an email with "Thanks, ▓▓▓ or something close to that. He never would sign off an email with just ▓▓▓ Whitsett said he contacted Ricoh and asked them to research the original email. He said once the results were provided to him, he would contact me.

Later, I received a call back from Whitsett. He provided me with the information from Ricoh regarding the email to Boone. Whitsett said Ricoh had gone through his email history and the company noted all of his sent emails seven months prior to January 2011 were deleted. Ricoh was also unable to find email that matched the one Boone provided through his attorney. Whitsett said he had a large amount of emails (20-30 a day) that he sent during the seven month time frame, leading up to January 2011. He felt this was odd since at the time Boone was employed with Ricoh, he was assigned with the IT (Information Technology) department. Ricoh was going to continue their search for Whitsett's emails and he would contact me at a later time with the results.

### Continued Investigation:

On 09/13/2012, I received two email strings from Ricoh Senior Corporate Counsel ▓▓▓▓ Bartz. The first email string from Bartz was received from Whitsett. Whitsett had copied the email from Boone dated on 12/06/2011to Bartz for review. Bartz then forwarded the email to ▓▓▓▓ Palicheria of Ricoh asking him to *"Confirm whether or not this specific e-mail is in the archives for messages sent that day; and Confirm if this e-mail exists in John Boone's receive from that date."*

| Agent: **TFA Martin Beltran** | Page 2 of 3 | Date: |
|---|---|---|

F:\REACT reports\REACT Supplement Case 2011-0057 Ricoh Fraud.doc

000000450

09/13/2012



### Rapid Enforcement Allied Computer Team (R.E.A.C.T.)

North Office ~ 1650 S. Amphlet Blvd #213, San Mateo CA 94402 Phone 650-655-1060
South Office ~ 3130 De La Cruz Blvd #209, Santa Clara CA 95054 Phone 408-282-2420

## INVESTIGATION REPORT

Case No: 2011-0057

| Defendant: John Boone | Crime Type: Grand Theft |
|---|---|

Palicheria responded to Bartz, ***"After verifying ███'s sent box out of his laptop archive and John Boone's inbox on topaz1, I was not able to find the specified email in either of the these folders."*** Bartz then sent me a response email indicating Boone's email from Whitsett was not sent from their system as "suggested." The email was not in the server archives for either Whitsett or Boone and it was not found in the archives in Whitsett's laptop, which there were other emails from that date located.

The second email string started with Palicheria sending Bartz copied email attachments from Boone's inbox dated 12/06/2011. The emails to Boone were sent from ███ Michael (Gogrid Solutions Architect) and ███ Zavlaris (Gogrid). Between both emails, Zavlaris' email was subject titled "Network Diagram Visio" and Michael's email discussed plans and specs for servers.

Bartz then sent Whitsett detailing how they searched his inbox for emails from Boone during 12/06/2012. The only email that was found was the email in Boone's inbox archives from Gogrid. That email did not match the email Boone claimed that came from Whitsett the same day. Bartz stated he was not "100% final" but was certain enough the email from Boone did not appear to be "completely authentic if real at all." Bartz felt the email from Boone looked as though it was "cobbled together" from other emails and made into one. He was also unable to locate "ANY" sent emails in their archives from prior to 01/02/2012. Bartz stated that was "unusual" in the opinion of "IT" since Whitsett by this time was working for Ricoh for "half of a year" and they were able to find "sent" emails from other employees randomly checked. Bartz indicated they would be checking Whitsett's laptop computer. I placed copies of the emails into the case file for complete details.

### Recommendations:

I request this supplement report be sent to Deputy District Attorney Tom Flattery for review.

000000451

09/13/2012

| Agent: TFA Martin Beltran | Page 3 of 3 | Date: |
|---|---|---|

F:\REACT reports\REACT Supplement Case 2011-0057 Ricoh Fraud.doc