# EXHIBIT 7



1  LEWIS & LLEWELLYN LLP
       Marc R. Lewis (Bar No. 233306)
2      Paul T. Llewellyn (Bar No. 216887)
   71 Stevenson Street, Suite 825
3  San Francisco, California 94105
   Telephone:  (415) 800-0590
4  Facsimile:  (415) 390-2127
   Email:  mlewis@lewisllewellyn.com
5
   Attorneys for Plaintiff
6  Casto Travel, INC, A CALIFORNIA CORPORATION

7

ENDORSED
F I L E D
*San Francisco County Superior Court*

JAN - 9 2013

CLERK OF THE COURT
BY: _____ DENNIS TOYAMA
                        Deputy Clerk

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   IN THE COUNTY OF SAN FRANCISCO

10

11  CASTO TRAVEL, INC., a California corporation      CASE NO.

12             Plaintiff,                COMPLAINT FOR DAMAGES AND
                                         INJUNCTIVE RELIEF FOR:
        v.
13                                       **(1) BREACH OF CONTRACT**
   JOHN WINSTON BOONE, an individual,
14 AKA JOHN MCELROY, JUSTIN              **(2) FRAUD AND INTENTIONAL DECEIT**
   WINABALI, JOHN SMITH, JOHN KING,
15 JOHN GREENE; and DOES 1-10, inclusive. **(3) CONVERSION**

16             Defendants.              **(4) TRADE SECRET MISAPPROPRIATION**

17                                       **(5) BREACH OF CONFIDENTIAL
                                         RELATIONSHIP**
18
                                         **(6) INTENTIONAL INTERFERENCE WITH
19                                       PROSPECTIVE ECONOMIC ADVANTAGE**

20                                       **(7) BREACH OF COVENANT OF GOOD
                                         FAITH AND FAIR DEALING**
21
                                         **(8) UNJUST ENRICHMENT**
22
                                         **DEMAND FOR JURY TRIAL**
23
                                         Trial Date:  None Set
24

25

26

27

28

                    COMPLAINT AND DEMAND FOR JURY TRIAL

SUBJECT TO
PROTECTIVE ORDER

EXHIBIT 7

FILED BY FAX
002150

1    Casto Travel Inc. alleges as follows against John Winston Boone (aka John McElroy,

2  Justin Winabali, John Smith, John King and John Greene) and DOES 1-10:

3                                    **INTRODUCTION**

4       1.    Casto Travel Inc. ("Casto") is the largest full-service, privately owned travel

5  management company in Northern California and provides corporate, vacation and group travel

6  management services.

7       2.    This case is about John Boone, a former employee of Casto, who during his short

8  tenure at Casto stole thousands of dollars, falsified documents, secretly took confidential

9  information and contracts, and lied his way through the few short months of his employment.

10  While Boone's time at the firm was short, the wake of destruction he left behind is extensive and

11  continues to hurt the business today.

12      3.    Casto has yet to conclusively determine the full impact of Boone's unlawful acts.

13  Casto has filed this lawsuit to bring the truth about Boone's actions to light and redress the harm

14  that he has caused by his illegal conduct.

15                                   **THE PARTIES**

16                                  Casto Travel Inc.

17      4.    Casto Travel Inc. is a California corporation headquartered in San Jose,

18  California.

19      5.    Casto provides travel services to corporations and individuals including group

20  bookings, hotel and air travel, vacation packages, visa and passport processing, and general

21  travel planning.

22      6.    Casto was founded by Maryles Casto in 1975, the mother of the current COO

23  Marc Casto, and has over 85 employees across offices in Northern California (San Jose, San

24  Francisco, Tiburon and Kentfield).

25                                    Defendants

26      7.    On information and belief, Boone is a California resident whose primary

27  residence is in Novato, and he uses a post office box in San Francisco for his communication.

28

                                           2

                   **COMPLAINT AND DEMAND FOR JURY TRIAL**

SUBJECT TO
PROTECTIVE ORDER

8.      On information and belief, Boone also goes by the aliases John McElroy, Justin Winabali, John Smith, John King and John Greene.

9.      On information and belief, Boone uses various business names such as HS Consortium Inc., American Blog Inc., Great Ideas LLC, Social Media Design Group LLC, SocialMediaInc.org, and Norcal Supreme.

10.     The true names and capacities, whether individual, corporate or otherwise, of Defendants Does 1-10, inclusive, are unknown to Casto, who therefore sues each and all of them by such fictitious names.  Casto will seek leave to amend this complaint to allege their true names and capacities when they have been ascertained.  Casto is informed and believes and thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged.

## FACTUAL ALLEGATIONS

### *Casto Hires Boone And Boone Agrees To Casto's Confidentiality Policies*

11.     In October 2011, Casto hired Boone as Vice President of Information.

12.     In connection with that position, Casto provided Boone with a $120,000 annual salary plus a performance-based bonus, a $10,000 signing bonus, as well as comprehensive medical, vision and dental benefits.

13.     Boone signed an employment contract with Casto, which specifically included a section about confidentiality, explicitly stating Casto's confidentiality policy.  A true and correct copy of this contract is attached as Exhibit 1.

14.     Boone also signed a separate "Non-Disclosure Agreement for Confidential Information," outlining in detail Casto's confidentiality policy and specifically stating, "employee will not disclose any Confidential Information to any person or entity…[and] at no time will Employee make use of Confidential Information for his or her own benefit."  A true and correct copy of this contract is attached as Exhibit 2.

//

//

3

COMPLAINT AND DEMAND FOR JURY TRIAL

SUBJECT TO
PROTECTIVE ORDER

*Boone Lies To Casto, Pays Himself $11,500 For A Job He Was Supposed To Outsource, And Costs Casto A Lucrative Acquisition*

15.  About one month after he started at Casto, Boone was tasked with revamping the website for the "Singles Travel Company."  Singles Travel Company is an independent company owned by Ann Thomas.  Casto and Ann Thomas had entered into a contractual relationship whereby Singles Travel Company could use Casto's name, reputation, and resources, and when customers booked a trip or vacation through Singles Travel Company, Casto would get a percentage of the booking.  Casto was planning on formally acquiring Singles Travel Company, and the acquisition was forecasted to be very profitable for Casto in 2012.

16.  Casto instructed Boone to revamp the Singles Travel Company website.  Boone was instructed not to revamp the website himself, but to find the best and most cost effective web design service to do the job.

17.  Boone represented to Casto that he searched for a web design firm to revamp the website and that, based on his research, the best company for the job was the so-called "Social Media Design Group."  Boone then submitted an $11,500 invoice to Casto to pay Social Media Design Group for the work.  Boone first asked that the check be made out to Social Media Design Group and then later asked the check to be reissued to SocialMediaInc.org.

18.  Boone said he would hand deliver a check to the web designer, a man named Matthew Galvin, at Social Media Design Group at an address in Santa Cruz, California.

19.  In reality, unbeknownst to Casto, Boone had created a fake $11,500 invoice on his own computer and submitted it to Casto for payment.

20.  What Boone never told Casto is that *he* in fact was the "Social Media Design Group," that he had created this "web design" business and was paying himself out of Casto's wallet.

21.  Boone took an $11,500 check from Casto and represented that he was bringing it to Matthew Galvin.  The check was made payable to Social Media Inc.Org, the payee designated by Boone for the purported services.  Unbeknownst to Casto, Boone deposited this check in his

4

SUBJECT TO
PROTECTIVE ORDER

1   own bank account – the very same account where Boone had his Casto payroll direct deposited.

2       22.     Boone filed articles of incorporation for "SocialMediaInc.Org" back in 2010, and

3   he is listed as the Incorporator.

4       23.     Not surprisingly, neither the "Social Media Design Group" nor Boone himself

5   completed the revamp of the Singles Travel Company website.  As a result of Boone's acts and

6   omissions, Singles Travel Company terminated their relationship with Casto, resulting in the loss

7   of this potentially lucrative acquisition, and damage to its reputation.

8       24.     Matthew Galvin is in fact a real person, and Casto later learned that Boone had

9   personally paid Matthew Galvin and his company "Active Matrix" a few hundred dollars to do

10  some cursory work on the Singles Travel Company website.

11  ***Boone Makes Thousands Of Dollars Of Unauthorized Personal Charges On His Casto***

12  ***Company Credit Card***

13      25.     In connection with his employment, Boone was given a company credit card for

14  strictly company business use.  Beginning in December 2011, about two months after he started

15  at Casto, Casto's accounting department started noticing unauthorized charges appearing on

16  Boone's company credit card statements.

17      26.     After being caught making thousands of dollars in personal charges, Boone did

18  not deny that he incurred improper personal expenses.  Instead, he admitted his wrongdoing, and

19  asked Casto's accounting department to deduct the charges from his "quarterly earn out."

20      27.     "Quarterly earn out" is not a term used at Casto, nor did anyone in the accounting

21  department know what Boone was referring to at the time.

22      28.     At this point, accounting passed the issue on to the human resources department

23  and Boone was advised and warned about the proper use of the company credit card.

24      29.     Boone admitted the charges were personal and agreed to pay Casto for them in an

25  email he wrote to Casto's Vice President of Finance, stating that he planned to document all

26  charges and write a check for all personal charges.

27      30.     For the following months, Casto continued to demand that Boone re-pay the

28

5

COMPLAINT AND DEMAND FOR JURY TRIAL

SUBJECT TO
PROTECTIVE ORDER

1  personal charges he made.  Boone again promised to reimburse Casto and returned the company

2  credit card to prevent future issues like this.

3       31.    Boone continued to lie and say that payment was on the way.  By May 2012, his

4  personal charges due to Casto amounted to over $7,000.

5       32.    Boone has not repaid the personal charges he made.

6       33.    Casto terminated Boone on May 17, 2012.  On this same day, Boone again stated

7  that he had $7,000 in personal charges owed to Casto and promised to pay this amount

8  personally after his termination.

9       34.    Upon his termination, Casto paid Boone $10,000 (pre-tax) in severance.

10       35.    Casto also paid Boone an additional $15,000 (pre-tax) commission for negotiating

11  a discount with AT&T as a phone carrier for Casto.

12       ***Boone Lied To Casto To Get Casto To Fund A Personal Trip To New York***

13       36.    On information and belief, a few months into his employment, Boone set up a

14  business trip to New York.  Boone informed Casto that the intended purpose of this trip was to

15  meet with representatives with AT&T to negotiate their services contract with Casto.

16       37.    Boone informed Casto that AT&T had agreed to fly both him and his girlfriend to

17  New York for this meeting and that they would reimburse Casto for the flights and hotel.

18       38.    As such, Boone paid for both his and his girlfriend's airline tickets as well as

19  multiple nights in a New York City hotel using Casto's credit card.

20       39.    When Casto inquired about reimbursement for the AT&T trip, Boone repeatedly

21  represented that payment was forthcoming.

22       40.    Later Casto discovered that AT&T never made any promises or agreements to pay

23  for Boone's trip to New York, let alone his girlfriend's trip.

24       41.    Boone never reimbursed Casto for what was clearly a personal trip for Boone and

25  his girlfriend.

26  //

27  //

28

6

COMPLAINT AND DEMAND FOR JURY TRIAL

SUBJECT TO
PROTECTIVE ORDER

1   *After Terminating Boone, Casto Discovers Boone Repeatedly Violated The Confidentiality*

2   *Agreement He Signed By Forwarding Confidential Information*

3       42.    After his termination, Casto discovered that Boone had emailed many of Casto's

4   proprietary client contracts, including contracts with United Airlines, American Airlines, Delta

5   Airlines and Cathay Pacific Airlines to his personal email account.

6       43.    Casto also discovered that Boone had forwarded internal confidential marketshare

7   information on to an outside personal email account of Jenny C. Smith, a non-Casto employee.

8       44.    Casto also discovered that, upon being terminated, Boone took proprietary and

9   confidential information such as client lists and contracts with key suppliers from the company.

10  *Boone Secretly Created a Fake Offer Letter On Casto Letter Head for Job At Casto For His*

11  *Ex-Wife*

12      45.    After his termination, Casto discovered that Boone had created a fake "welcome

13  letter" on Casto letterhead, welcoming Christine Boone (his ex-wife) to Casto as the "Online

14  Product Fulfillment Specialist" for Casto.

15      46.    Christine Boone never worked at Casto, nor was she ever offered a job there.

16      47.    On January 11, 2012, after creating this fake offer letter, Boone secretly emailed

17  the offer letter from his Casto work email to two external email addresses.

18      48.    On information and belief, Boone was using the Casto name and reputation for his

19  and his ex-wife's personal benefit.

20                          **JURISDICTION AND VENUE**

21      49.    Casto is a California corporation and, upon information and belief, Boone is a

22  California resident.  The allegations below are pursuant to the laws of California, and Boone

23  conducted the alleged fraudulent activities in San Francisco, California.

24      50.    The prayer for relief, exclusive of interest, and the value of the property in

25  controversy, is greater than $25,000.

26      51.    The Court therefore has jurisdiction under California Code of Civil Procedure

27  Section 410.10, and venue is proper in this Court under California Code of Civil Procedure

28

7

COMPLAINT AND DEMAND FOR JURY TRIAL

1   Section 395.5.

2                               **CAUSES OF ACTION**

3                              **FIRST CAUSE OF ACTION**

4      **Breach of Contract (Employment Contract and Confidentiality Agreement)**

5          52.    Casto incorporates by reference the allegations of paragraphs 1-51 as though fully

6   set forth herein.

7          53.    On October 3, 2011, Defendant signed and agreed to be bound by his employment

8   contract.  (*See* Exhibit 1.)

9          54.    Page 3 of the employment agreement states that "[y]our acceptance of this offer

10  and commencement of employment with the Company is contingent upon the execution…of the

11  Company's Confidentiality Agreement…prior to or on your Start Date." (*Id.*, Page 3)

12         55.    On October 20, 2011, Defendant signed the Confidentiality Agreement, titled

13  "Non-Disclosure Agreement for Confidential Information".  (*See* Exhibit 2).

14         56.    The Confidentiality Agreement defines "Confidential Information" as

15  "…confidential lists of clients and prospective clients, client contracts…and [] information

16  concerning confidential agreements with suppliers of travel services."  (*See id.*, Para. 1(a).)

17         57.    In Section 1 of the Confidentiality Agreement, the parties agree that Boone would

18  "not disclose any Confidential Information to any person or entity."  (*Id.* at para. 1(b)).

19         58.    Furthermore, under the contract, "[e]mployee agrees that any work product that

20  he or she develops for Casto Travel, Inc., or its clients or any client lists or other documents with

21  respect thereto shall be the property of Casto Travel, Inc." (*Id.*)

22         59.    Casto has fully performed its obligations under the Employment Agreement and

23  Confidentiality Agreement.

24         60.    Defendant breached these contracts by, among other things:

25                a.   Emailing multiple proprietary client contracts, including United Airlines,

26                     American Airlines, Delta Airlines and Cathay Pacific Airlines to his personal

27                     email account.

28

8

COMPLAINT AND DEMAND FOR JURY TRIAL

SUBJECT TO
PROTECTIVE ORDER

b.  Emailing internal confidential Marketshare information on to Jenny C. Smith, non-Casto employee; and

c.  Taking Casto electronic passwords with him.

61.     As a result of Defendant's breach of the Employment Agreement and Confidentiality Agreement, Defendant has caused damage to Casto in an amount to be determined at trial.

### SECOND CAUSE OF ACTION

### Fraud and Deceit- Intentional Misrepresentation

62.     Casto incorporates by reference the allegations of paragraphs 1-61 as though fully set forth herein.

63.     On or around December 1, 2011, Boone presented an $11,500 invoice to Casto that he claimed was to be paid to "Social Media Design Group" for web design services rendered by Matthew Galvin for the Singles Travel website.

64.     Boone never told Casto that "Social Media Design Group" was in fact a company solely owned by him.

65.     The representations made by Boone were in fact false, as he himself manufactured the invoice on his computer and deposited the money in his own bank account.

66.     Boone intended that Casto rely on his representations and pay the $11,500 invoice unknowingly to Boone.

67.     At the time, Casto was completely unaware of Boone's scheme, and believed that Social Media Design Group was a legitimate web design company that provided services for the Singles Travel website.

68.     Casto did not know that Social Media Design Group was in fact Boone's company.

69.     Had Casto known this, it never would have paid the invoice and would have hired a proper web design firm to do the work.

70.     Unbeknownst to Casto, Boone paid Matthew Galvin only a few hundred dollars

9

COMPLAINT AND DEMAND FOR JURY TRIAL

SUBJECT TO
PROTECTIVE ORDER

1   on the side to do cursory web design work on Singles Travel' website. As a result of the poor

2   job done, Singles Travel pulled out of the corporate acquisition by Casto.

3        71.    As a proximate result of Boone's fraud, deceit, and intentional misrepresentation

4   of facts as alleged herein, Casto has been damaged in an amount as yet unascertained but which

5   Casto believes is in excess of $25,000 based on the financial projections of the Singles Travel

6   acquisition, in addition to the $11,500 plus interest paid to Boone.

7        72.    Casto further requests punitive damages in that in doing the acts herein alleged,

8   Boone acted with oppression, fraud and malice, willfully and wantonly, and thus Casto is entitled

9   to punitive damages in an amount according to proof.

10                              **THIRD CAUSE OF ACTION**

11                                  <u>Conversion</u>

12       73.    Casto incorporates by reference the allegations of paragraphs 1-72 as though fully

13   set forth herein.

14       74.    Boone stole numerous things from Casto, many of which Casto did not discover

15   until after his termination. Casto believes that in addition to the following things Boone took,

16   there are likely others of which Casto may still be unaware. Boone's conversion includes the

17   following:

18       a.   Monetary conversion of unauthorized credit card charges

19            i.   Boone was issued a corporate credit card when he started working at

20                 Casto. The credit card was only to be used for business purposes and

21                 was paid by Casto.

22            ii.  Beginning in December, 2011 Boone began making thousands of

23                 dollars in unauthorized personal charges on the Casto company credit

24                 card, including among other things, charges for hotel stays at the Ritz

25                 Carlton in Half Moon Bay, gas and personal air travel to Hawaii.

26            iii. Boone sought to conceal the charges until he was caught red handed

27                 by accounting.

28

COMPLAINT AND DEMAND FOR JURY TRIAL

SUBJECT TO
PROTECTIVE ORDER

iv.  Boone then admitted these charges were personal and that he had to reimburse Casto for them.

v.  Boone never paid back Casto the $4,396.52 of personal charges.

vi.  Casto had to pay the credit card company for Boone's personal charges and as a proximate result of Boone's conversion, Casto has been damaged in the amount of $4,396,52 plus interest since December, 2011.

b.  Conversion of funds for a trip to New York City with his girlfriend

i.  Boone went to New York with his girlfriend for a weekend, allegedly to meet with AT&T about their service contract with Casto.

ii.  Boone used his Casto company credit card to book the flights, hotels, and expenses for both him and his girlfriend for this trip.

iii.  Boone lied to Casto, saying that AT&T had agreed to pay for this trip, and reimburse Casto for the airline tickets, hotels, food etc. for him and his girlfriend to go to New York.

iv.  Casto later learned that this was untrue: AT&T never agreed to pay for Boone and his girlfriend's trip to New York.

v.  This was simply another scheme of Boone's to get Casto to pay for his personal trips with his girlfriend.

vi.  Because of Boone's unlawful acts of lying to Casto and charging hotels and flights on the company card that he knew would never be reimbursed, Casto is damaged in the amount of $2,382.32, the charges for the trip put on the Casto credit card, plus interest.

c.  Conversion of confidential information

i.  Casto has many client contracts, which are confidential and not publicly available.

ii.  Before his departure, Boone stole these crucial confidential documents

11

COMPLAINT AND DEMAND FOR JURY TRIAL

SUBJECT TO
PROTECTIVE ORDER

1        by emailing them to his outside personal email account.

2    iii.  As a result of Boone's actions, Casto has been damaged by the

3        exposure and potential proliferation of information by Boone.

4    iv.  Boone has demonstrated an utter disregard for Casto's confidential

5        information and as such Casto reserves its rights to seek an injunction

6        for Boone to cease the spread of Casto's confidential information.

7    v.   Furthermore, Casto requests punitive damages in that in doing the acts

8        herein alleged, Boone acted with oppression, fraud and malice,

9        willfully and wantonly, and thus Casto is entitled to punitive damages

10       in an amount according to proof.

**FOURTH CAUSE OF ACTION**

<u>**Trade Secret Misappropriation, California Civil Code Section 3426**</u>

75.    Casto incorporates by reference the allegations of paragraphs 1-74 as though fully set forth herein.

76.    Casto posses numerous trade secrets including customer contracts, client lists, contracts with key suppliers and airline market share data.

77.    California Civil Code Section 3426.1 defines a trade secret as information that "(1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code Section 3426.1.

78.    Casto's customer contracts, client lists, contracts with key suppliers and market share requirements are all trade secrets as they are the key to Casto's success: if in the hands of others or competitors, Casto's ability to negotiate with these clients, maintain beneficial market share status, and ability to do business would be severely damaged.

79.    Boone was fully aware of the confidential nature of this information and specifically signed a Confidentiality Agreement with Casto accordingly. (*See* Exhibit 1).

12

COMPLAINT AND DEMAND FOR JURY TRIAL

SUBJECT TO
PROTECTIVE ORDER

80.     Boone stole this confidential and proprietary information by surreptitiously emailing to his personal email account multiple client contracts including United, American and Cathay Pacific on February 9, 2012.

81.     Boone also wrongfully disclosed this information to a non-Casto employee.  For example, he emailed an individual named Jenny C. Smith, a non-Casto employee at jcanfieldsmith@gmail.com, the confidential United Airlines market share information on May 5, 2012.

82.     At this time, the extent of damages caused by Boone's misappropriation of trade secrets is unknown but will determined at trial.

83.     Furthermore, Casto requests punitive damages in that in doing the acts herein alleged, Boone acted with oppression, fraud and malice, willfully and wantonly, and thus Casto is entitled to punitive damages in an amount according to proof.

## FIFTH CAUSE OF ACTION

### Breach of Confidential Relationship

84.     Casto incorporates by reference the allegations of paragraphs 1-83 as though fully set forth herein.

85.     Casto and Boone had an agreement that Boone was to keep all of Casto's information confidential.  Boone read, understood, and signed this confidentiality agreement titled "Non-Disclosure Agreement for Confidential Information" on October 20, 2011.  (Exhibit 2).

86.     During the course of his employment at Casto, Boone was privy to Casto's confidential information.

87.     Boone breached his confidential relationship with Casto by, among other things, secretly passing along Casto's client contracts to Jenny C. Smith, a non-Casto employee on May 5, 2012, as well as to his external personal email account.

//

//

13

COMPLAINT AND DEMAND FOR JURY TRIAL

SUBJECT TO
PROTECTIVE ORDER

002162

### SIXTH CAUSE OF ACTION

**Intentional Interference With Prospective Economic Advantage Regarding Singles Travel**

88.    Casto incorporates by reference the allegations of paragraphs 1-87 as though fully set forth herein.

89.    Boone intentionally interfered with the economic relationship between Casto and Singles Travel Company that probably would have resulted in an economic benefit to Casto.

90.    Casto was planning on formally acquiring Singles Travel Company in 2012, and the acquisition was forecasted to be very profitable for Casto.

91.    Casto and Singles Travel Company were in the midst of negotiating a deal whereby Singles Travel Company would become part of the Casto umbrella. This acquisition was forecasted to be profitable for Casto in 2012.

92.    Boone knew of this economic relationship as he was tasked with updating and revamping the Singles Travel Company website for its integration with Casto's website.

93.    Boone specifically intended to disrupt the relationship by sabotaging the web design project and Casto's relationship with the principal of Singles Travel Company, Ann Thomas.

94.    Boone engaged in wrongful conduct through his misrepresentation to Casto that he had hired a top web design company to do the website project, when really he pocketed the money and personally hired Matthew Galvin to do simply a cursory job.

95.    Boone also mismanaged the relationship with Ann Thomas, and she was so put off by working with him that she backed out of the deal with Casto altogether.

96.    As a result of Boone's behavior, Casto lost the acquisition deal with Singles Travel Company and the associated revenues with that acquisition.

97.    Boone's mishandling of the website design project as well as his unprofessional and rude treatment of Ann Thomas was a substantial factor in Casto's losing the Singles Travel Company deal.

//

COMPLAINT AND DEMAND FOR JURY TRIAL

SUBJECT TO
PROTECTIVE ORDER

## SEVENTH CAUSE OF ACTION

### Breach of Covenant of Good Faith and Fair Dealing

98. Casto incorporates by reference the allegations of paragraphs 1-97 as though fully set forth herein.

99. Like all contracts, the Employment Agreement and Confidentiality Agreement between Casto and Boone contained an implied covenant of good faith and fair dealing which bound each party, such that neither party would do anything that would injure the rights of the other party to receive the benefits of the agreement, and that imposes on each party the duty to exercise its discretion in such a way as to protect the reasonable expectations of the other party to the contract.

100. By engaging in the conduct described above, especially stealing proprietary information and money from the company, Boone's acts severely injured the rights of Casto and breached its duty to protect the reasonable expectations of Casto.

101. As a direct and proximate result of Boone's breach, Casto has been damaged in an amount as yet unascertained but which Casto believes is in excess of $25,000 and which will be proved at trial. Boone's acts in breaching the implied covenant of good faith and fair dealing in the agreements constituted action taken in bad faith, which was willful, oppressive and malicious, and which justifies an award of punitive damages.

## EIGTH CAUSE OF ACTION

### Unjust Enrichment

102. Casto incorporates by reference the allegations of paragraphs 1-101 as though fully set forth herein.

103. Defendant unjustly received benefits at Casto's expense and through his wrongful conduct, including his breach of the Employment Agreement, Confidentiality Agreement, unlawful personal credit card expenses and trip with his girlfriend at Casto's expense. It would be unjust for Defendants to retain any value they obtained as a result of their wrongful conduct.

104. Casto is entitled to the establishment of a constructive trust consisting of the

15

COMPLAINT AND DEMAND FOR JURY TRIAL

SUBJECT TO
PROTECTIVE ORDER

1    benefit conferred upon Defendants by the revenues derived from his wrongful conduct at Casto's

2    expense, and all profits derived from that wrongful conduct.  Casto is further entitled to full

3    restitution of all amounts in which Defendant has been unjustly enriched at Casto's expense.

4                                **PRAYER FOR RELIEF**

5             WHEREFORE, Casto prays for judgment against defendant as follows:

6             1.      For money damages according to proof.

7             2.      For interest on money damages pursuant to, but not limited to Cal. Civ.

8    Code section 3287 for damages certain or capable of being made certain, and sections 3288,

9    3289 and 3291.

10            3.      For punitive damages according to proof;

11            4.      For costs of suit, including attorneys' fees; and

12            5.      For such other and further relief as the court may deem proper.

13

14                               **DEMAND FOR JURY TRIAL**

15            Casto demands a jury trial on all triable issues.

16

17   Dated:  January 9, 2013                    LEWIS & LLEWELLYN LLP
                                                Marc R. Lewis
18                                              Paul T. Llewellyn

19
                                                By: _____
20                                              Marc R. Lewis
                                                Attorneys for Plaintiff
21                                              Casto Travel, Inc.

22

23

24

25

26

27

28

                                        16

SUBJECT TO
PROTECTIVE ORDER

002165

# EXHIBIT 1

SUBJECT TO
PROTECTIVE ORDER

002166



CASTO

October 3, 2011

John Boone
103 Maybeck St
Novato, CA 94949

**Re:** **Offer of Employment Vice President of Information Systems**

Dear John:

Casto Travel (the "Company") is pleased to present this offer of employment for the position of VP of Information Systems. This is a full time, Exempt position carrying considerable responsibility and is integral to our continued business development and success. We are excited about your interest in joining the Company and are confident that you will be an important addition to our team. This Letter formally presents the specifics of our offer of employment with important details that you will want to consider:

| | |
|---|---|
| **Title:** | VP of Information Systems |
| **Rate of Pay:** | $120,000 annual base salary |
| **Status:** | Regular, Full-Time Employee; Exempt |
| **Supervisor:** | Marc Casto |
| **Start Date:** | Monday October 24, 2011 (subject to the terms of this Letter) |
| **Location:** | San Francisco |
| **Work Schedule:** | 40 hours a week |
| **Benefits:** | In accordance with company policies as specified in the Employee Handbook and elsewhere from time to time. |

**Professional Contribution**

You agree that you will, at all times and to the best of your abilities, loyally and conscientiously perform all of the duties and obligations required of you pursuant to the express and implicit terms of this Letter, and to the reasonable satisfaction of the Company. You further agree that during your term of employment, you will devote all of your business time and attention to the business of the Company and that the Company will be entitled to all of the benefits and profits arising from or incidental to all your work, services and advice. When you accept employment you also agree that you will not render commercial or professional services of any nature to any person or organization, whether or not for compensation, without the prior written consent of the Company's Board of Directors, and you will not directly or indirectly engage or participate in any business that is competitive in any manner with the business of the Company.

On occasion schedules may need to be rearranges due to employee absence or general operational needs. Your role may require work at on-site location or another department. Your work schedule may also change due to business needs.

SUBJECT TO
PROTECTIVE ORDER

John Boone
Sept 29, 2011
Page 2 of 4

### At-Will Employment: Status

Your employment with the Company is "at-will" and will continue only so long as continued employment is mutually agreeable to you and the Company. While we are extending this offer with the hope you will stay and enhance your career with us, either you or the Company may terminate the employment relationship at any time, for any reason, with or without notice or cause.

### Compensation

1. **Base Salary.** You will be paid a monthly Base Salary of $10,000. Your salary will be payable in two equal payments per month pursuant to the Company's regular payroll policy.

2. **Signing Bonus.** $10,000 which will be in full Monday October 24, 2011.

3. **Bonus.** Mutual agreement of reduction in expense and an increase in revenue. Amount TBD.

As you are regularly scheduled for 32 or more hours per week, you will earn those benefits for which you meet the eligibility requirements as specified in the plan documents, Employee Handbook and this Letter. Availability, terms and the associated eligibility requirements of our existing benefit programs, are subject to change with or without notice.

### Benefits

The Company will provide you with a benefit package that includes, but is not limited to, health and dental benefits, holidays, paid time off (e.g. vacation, jury duty, bereavement leave, sick time), a retirement plan and a flexible benefit plan. The details of the Company's benefit policies are described in the Employee Handbook, and any applicable Summary Plan Description. The benefits currently offered to you include:

1. **Medical.** The Company currently offers you the choice of medical coverage through Blue Shield for which you will be eligible on November 1, 2011. The Company will pay a portion of your medical premium.

2. **Dental.** The Company currently offers Principal dental insurance coverage for which you will be eligible on November 1, 2011. The Company will pay a portion of your dental premium.

3. **Vision.** Vision Coverage through Blue Shield for which you will be eligible on November 1, 2011.

SUBJECT TO
PROTECTIVE ORDER

John Boone
Sept 29, 2011
Page 3 of 4

4. **Paid Holidays.** The Company has identified 8 days of paid holiday benefits per calendar year.

5. **Paid Time Off (PTO).** The Company recognizes the importance of time off for vacation, illness or to attend personal commitments. You will be eligible to accrue 5 hours of paid time off per pay period for you first year and then this will increase to 6.67 hours thereafter.

### Confidentiality Agreement

Your acceptance of this offer and commencement of employment with the Company is contingent upon the execution, and delivery to an officer of the Company, of the Company's Confidentiality Agreement (the "Non-Disclosure Agreement for Confidential Information") prior to or on your Start Date.

### General Policies

The details of the basic Company policies are described in the Company's Employee Handbook. The provisions of the Employment Application, this Letter, the Employee Handbook, the Confidentiality Agreement, and the Arbitration Agreement constitute the full and complete terms of your employment and supercede any prior representations or agreements by anyone, either oral or written. These terms of employment are not subject to change or modification of any kind, unless specified in writing, and signed by you and the Company's President.

### Arbitration

In our Employment Application, you agreed to make arbitration the exclusive remedy for the resolution of any disputes, which may arise between the Company and you. Your signature below and on the Dispute Resolution/Arbitration Agreement confirms your agreement to utilize the arbitration procedure specified in both the Employment Application and the Employee Handbook for resolution of any disputes related to your employment. Please take the time necessary to review these policies, and ask any questions before signing this document and the Dispute Resolution/Arbitration Agreement.

### Confirmation Of Agreement

This offer is contingent upon your completion and execution of all employment documents listed in the attached in the go sunaro letter, our receipt (no later than 3 business days following your Start Date) of acceptable proof of identification and

SUBJECT TO
PROTECTIVE ORDER

John Boone
Sept 29, 2011
Page 4 of 4

authorization to work in the United States, and the completion and the Company's acceptance of the information obtained in your background check.

This offer expires within ten (10) calendar days of the date of this Letter; October 13th, 2011, unless the Company receives a signed copy within that period. This offer supercedes any and all prior offers made by Casto to you both verbally and in writing.

*John,* we are delighted to be able to extend this offer of employment to you and sincerely feel the Company can provide you with the opportunity to achieve rewarding results for both you and the Company. Please contact me with any questions. We look forward to working with you.

Sincerely,

Marc Casto
*COO*
*Casto Travel Company*

---

The undersigned individually hereby accepts the Company's employment offer as detailed above. The undersigned acknowledges that there is no agreement between the Company and the undersigned for any definite period of employment and that the undersigned's employment may be terminated at any time, with or without cause. This offer is contingent upon the successful completion of a background check

SIGNATURE: John W. Boone _____     DATE: _____

PRINT NAME: John W. Boone _____

SUBJECT TO
PROTECTIVE ORDER



*travel beyond your expectations*

## NON-DISCLOSURE AGREEMENT FOR CONFIDENTIAL INFORMATION

I, _____JOHN Boone_____ "Employee" have been requested to sign this Non-Disclosure Agreement for Confidential Information. This agreement is intended to formalize in writing certain understandings and procedures related to Confidential Information, which have been in effect since the time I was initially employed by Casto Travel, Inc.

As a condition of and in consideration of my original and continuing employment, salary, and benefits at Casto Travel, Inc., and in a capacity in which I gain access to or contribute to the development of Confidential Information (as defined below), I confirm my understanding and agreement as follows:

1.  Confidentiality:

    a.  Definition of "Confidential Information"

    Employee acknowledges and recognizes that during the course of his or her relationship with Casto Travel, Inc., he or she may participate in the development of, or gain access to, "Confidential Information", including but not limited to (1) proposals, studies, marketing programs, and similar materials developed wholly or in part by Casto, (2) information concerning the business affairs and internal policies and procedures of Casto such as internal financial controls, procurement and subcontracting policies, and methods of developing bids, estimates, direct and indirect costs and similar items related to contracts for travel services with its clients, (3) confidential lists of clients and prospective clients, client contracts and other data related to such clients service needs and travel patterns, and (4) information concerning confidential agreements with suppliers of travel services.

    b.  Duty of Confidentiality

    **Employee agrees that during the period of this contract and at all times thereafter, employee will not disclose any Confidential Information to any person or entity (other than a person or entity for which any same was developed) and will not use or assist any other person or entity to use such Confidential Information to solicit or serve clients of Casto Travel, Inc. Employee agrees that any work product that he or she develops for Casto Travel, Inc., or its clients or any client lists or other documents with respect thereto shall be the property of Casto Travel, Inc.**

SUBJECT TO
PROTECTIVE ORDER

**NON-DISCLOSURE AGREEMENT FOR CONFIDENTIAL INFORMATION**

Page 2

At no time will Employee make use of Confidential Information for his or her own benefit. Employee will also take all reasonable precautions to ensure that Confidential Information is protected and kept from unauthorized persons. I f employee has any questions about what is Confidential Information or who is an "unauthorized person", he or she will check first with his or her supervisor before disclosing any such information.

2.   Restrictive Covenants:

Following termination of employment with Casto Travel, Inc., employee shall not be restricted form working for any travel service company anywhere, except according to the limitations set forth in paragraph 1 above and this paragraph 2. For a period of one year after termination of employment, employee shall not solicit, or assist any other persons or entity to solicit:

a.   any of Casto Travel, Inc.'s, clients existing at the time of employee's termination;
b.   any party whom employee had solicited on behalf of Casto Travel, Inc., before employee's termination and who became a client of Casto Travel, Inc., after employee's termination; and
c.   other persons acting as employees, agents, or independent contractors of Casto Travel, Inc., at the time of employee's termination.

Upon termination of employment for whatever reason, employee will not remove any documents, or copies thereof, containing Confidential Information from Casto Travel, Inc., premises. Employee will also return to Casto Travel, Inc., all keys, documents (together with all copies thereof), and the like containing or relating to such Confidential Information in his or her possession or under his or her control. Employee understands that such documents and things remain the sole property of Casto Travel, Inc. As used in this Agreement, the term "documents" includes letters, memoranda, drafts, reports, notes, notebooks, data, drawings, videotapes, catalogues, prints, plans, records (regardless of their form), specifications, and similar documents of a secret or Confidential nature relating to Confidential Information.

3.   Injunctive Relief: Employee acknowledges that a breach of the covenants set fort in paragraphs 1 and 2 of the Agreement would cause irreparable harm that cannot be adequately compensated by money damages. Therefore, in the event of a breach of such covenants, Casto Travel, Inc., shall be entitled to injunctive relief from a court of competent jurisdiction, in addition to any other remedy available at law or in equity.

SUBJECT TO
PROTECTIVE ORDER

**NON-DISCLOSURE AGREEMENT FOR CONFIDENTIAL INFORMATION**
Page 3

4.  Severability:  If a court decides that any restriction contained in this Agreement is unenforceable because of its extent, duration, scope, or other burden, then the court may reduce such extent, duration, scope, or burden the restriction is such reduced form as if originally contained in the Agreement.

5.  This Non-Disclosure Agreement for Confidential Information contains the entire agreement of the parties and supersedes any and all prior agreement, promises or understanding, oral or written, relating to the subject matter hereof.  Any other agreement, statement or promise not expressly set forth herein shall not be valid or binding, or of any force or effect.


I acknowledge that I have read the above and agree to its terms.


Employee Signature_____ Date _10-20-11_

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

WINABALI

John Winston Boone, AKA John McElroy, Justin Winibali, John Smith, John King, and John Greene, and Docs 1-10, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Casto Travel, Inc., *A CALIFORNIA CORPORATION*

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es)*

| CASE NUMBER: *(Número del Caso)* | CGC 13 - 527856 |
|---|---|

400 McAllister St.,
San Francisco, CA 94109

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Marc R. Lewis; Lewis & Llewellyn, 71 Stevenson St., Suite 825, San Francisco, CA 94105; 415-800-0591

DATE: JAN - 9 2013   CLERK OF THE COURT   Clerk, by   DENNIS TOYAMA , Deputy
*(Fecha)*                            *(Secretario)*                                           *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)

       ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUBJECT TO
PROTECTIVE ORDER

002175

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*                *WINABALI*

John Winston Boone, AKA John McElroy, Justin Winibali, John Smith,
John King, and John Greene, and Does 1-10, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Casto Travel, Inc.  *A California Corporation*

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

 You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

 There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

 *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

 *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

---

| | |
|---|---|
| The name and address of the court is: <br> *(El nombre y dirección de la corte es):* <br> <br> 400 McAllister St., <br> San Francisco, CA 94109 | **CASE NUMBER:** <br> *(Número del Caso):* <br> CGC 13 - 527856 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
 Marc R. Lewis; Lewis & Llewellyn, 71 Stevenson St., Suite 825, San Francisco, CA 94105; 415-800-0591

DATE:  JAN - 9 2013      CLERK OF THE COURT   Clerk, by      DENNIS TOYAMA      , Deputy
*(Fecha)*                           *(Secretario)*                           *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

| [SEAL] | **NOTICE TO THE PERSON SERVED:** You are served |
|---|---|
| | 1. ☐ as an individual defendant. |
| | 2. ☐ as the person sued under the fictitious name of *(specify):* |
| | 3. ☐ on behalf of *(specify):* |
| | under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor) |
| | ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee) |
| | ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person) |
| | ☐ other *(specify):* |
| | 4. ☐ by personal delivery on *(date):* |

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use <br> Judicial Council of California <br> SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 <br> *www.courtinfo.ca.gov* |

SUBJECT TO
PROTECTIVE ORDER

002176

# EXHIBIT 8

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SANTA CLARA
HALL OF JUSTICE
COMPLAINT FOR ARREST WARRANT(S)
JOHN W. BOONE   **DVM736**

THE PEOPLE OF THE STATE OF CALIFORNIA,
Plaintiff,

vs.

JOHN W. BOONE (02/14/1963),
aka MARK DOOLITTLE,
2269 CHESTNUT, #269 SAN FRANCISCO CA 94123

Defendant(s).

**FELONY COMPLAINT**

DA NO:  120409119
CEN
JWB WARR

The undersigned is informed and believes that:

## COUNT 1

On or about and between January 12, 2011 and June 29, 2011, in the County of Santa Clara, State of California, the crime of GRAND THEFT OF PERSONAL PROPERTY OF A VALUE OVER NINE HUNDRED AND FIFTY DOLLARS, in violation of PENAL CODE SECTION 484-487(a), a Felony, was committed by JOHN W. BOONE who did unlawfully take personal property, cash, of a value exceeding nine hundred and fifty dollars ($950.00), the property of Ricoh.

## COUNT 2

On or about and between January 12, 2011 and June 29, 2011, in the County of Santa Clara, State of California, the crime of FORGERY OF INSTRUMENT OTHER THAN A CHECK, MONEY ORDER, ETC., in violation of PENAL CODE SECTION 470(d), a Felony, was committed by JOHN W. BOONE who did with the intent to defraud, falsely make, alter, forge, and counterfeit, a(n) due bill for payment of money or property, and utter, publish, pass, attempt to pass and offer to pass, as true and genuine, a(n) due bill for payment of money or property, knowing it to be false, altered, forged, and counterfeited.

## COUNT 3

On or about and between January 12, 2011 and June 29, 2011, in the County of Santa Clara, State of California, the crime of USING PERSONAL IDENTIFYING INFORMATION WITHOUT AUTHORIZATION, in violation of PENAL CODE SECTION 530.5(a), a Felony, was committed by JOHN W. BOONE who did willfully obtain personal identifying information, the name of GoGrid, and used the information for an unlawful purpose, including to obtain, and attempt to obtain, credit, goods, services, real property, and medical information, in the name of GoGrid without his or her consent.

Any defendant, including a juvenile, who is convicted of and pleads guilty and no contest to any felony offense, including any attempt to commit the offense, charged in this complaint or information is required to provide buccal swab samples, right thumbprints and a full palm print impression of each hand, and any blood specimens or other biological samples required pursuant to the DNA and Forensic Identification Database and Data Bank Act of 1998 and Penal Code section 296, et seq.

Further, attached and incorporated by reference are official reports and documents of a law enforcement agency which the complainant believes establish probable cause for the arrest of defendant JOHN W. BOONE, for the above-listed crimes. Wherefore, A WARRANT OF ARREST IS REQUESTED.

Complainant therefore requests that the defendant(s) be dealt with according to law.
I certify under penalty of perjury that the above is true and correct.
Executed on April 25, 2012, in SANTA CLARA County, California.

Warrant received for service by:

on_____
Cash or Bond $_____

Muyo 30
( Muyo 30)
REACT  20110057
DENG/ D452/ FELONY/ LC

_____
JUDGE OF THE SUPERIOR COURT

# EXHIBIT 9

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SANTA CLARA

| THE PEOPLE OF THE STATE OF CALIFORNIA, | March 20, 2013 |
|---|---|
| Plaintiff, | |
| | DA NO 120409119 |
| | CEN 12031657 |
| | JWB BAIL  03/25/2013 |
| vs. | |
| | INFORMATION NO.  C1231150 |
| JOHN W. BOONE (02/14/1963), | |
| aka MARK DOOLITTLE, | |
| 2269 CHESTNUT, #269 SAN FRANCISCO CA 94123 | |
| Defendant(s). | |

INFORMATION
SUMMARY

| Count | Charge | Charge Range | Defendant | Allegation | Alleg. Effect |
|---|---|---|---|---|---|
| 1 | PC484-487(a) | 16-2-3 | John W. Boone | PC12022.6(a)(1) | 1 YEAR |
| 2 | PC484-487(a) | 16-2-3 | John W. Boone | PC12022.6(a)(1) | 1 YEAR |
| 3 | PC484-487(a) | 16-2-3 | John W. Boone | PC12022.6(a)(1) | 1 YEAR |
| 4 | PC484-487(a) | 16-2-3 | John W. Boone | PC12022.6(a)(1) | 1 YEAR |
| 5 | PC484-487(a) | 16-2-3 | John W. Boone | PC12022.6(a)(1) | 1 YEAR |
| 6 | PC484-487(a) | 16-2-3 | John W. Boone | PC12022.6(a)(1) | 1 YEAR |
| 7 | PC484-487(a) | 16-2-3 | John W. Boone | PC12022.6(a)(1) | 1 YEAR |
| 8 | PC484-487(a) | 16-2-3 | John W. Boone | PC12022.6(a)(1) | 1 YEAR |
| 9 | PC484-487(a) | 16-2-3 | John W. Boone | PC12022.6(a)(1) | 1 YEAR |
| 10 | PC484-487(a) | 16-2-3 | John W. Boone | PC12022.6(a)(1) | 1 YEAR |

EXHIBIT 9

| Count | Charge | Charge Range | Defendant | Allegation | Alleg. Effect |
|-------|--------|--------------|-----------|------------|---------------|
| 11 | PC484-487(a) | 16-2-3 | John W. Boone | PC12022.6(a)(1) | 1 YEAR |
| 12 | PC484-487(a) | 16-2-3 | John W. Boone | PC12022.6(a)(1) | 1 YEAR |
| 13 | PC470(d) | 16-2-3 | John W. Boone | | |
| 14 | PC530.5(a) | 16-2-3 | John W. Boone | | |
| 15 | PC134 | 16-2-3 | John W. Boone | | |

The District Attorney of the County of Santa Clara, by this Information alleges that:

## COUNT 1

On or about and between December 31, 2010 and January 14, 2011, in the County of Santa Clara, State of California, the crime of GRAND THEFT OF PERSONAL PROPERTY OF A VALUE OVER NINE HUNDRED AND FIFTY DOLLARS, in violation of PENAL CODE SECTION 484-487(a), a Felony, was committed by JOHN W. BOONE who did unlawfully take personal property, cash, of a value exceeding nine hundred and fifty dollars ($950.00), the property of Ricoh.

(NOPR) It is further alleged that in the commission and attempted commission of the offense(s) charged above the defendant JOHN W. BOONE, with the intent to do so, took, damaged and destroyed property of a value exceeding sixty-five thousand dollars ($65,000), within the meaning of Penal Code section 12022.6(a)(1).

## COUNT 2

On or about and between February 7, 2011 and February 22, 2011, in the County of Santa Clara, State of California, the crime of GRAND THEFT OF PERSONAL PROPERTY OF A VALUE OVER NINE HUNDRED AND FIFTY DOLLARS, in violation of PENAL CODE SECTION 484-487(a), a Felony, was committed by JOHN W. BOONE who did unlawfully take personal property, cash, of a value exceeding nine hundred and fifty dollars ($950.00), the property of Ricoh.

(NOPR) It is further alleged that in the commission and attempted commission of the offense(s) charged above the defendant JOHN W. BOONE, with the intent to do so, took, damaged and destroyed property of a value exceeding sixty-five thousand dollars ($65,000), within the meaning of Penal Code section 12022.6(a)(1).

## COUNT 3

On or about and between February 27, 2011 and March 9, 2011, in the County of Santa Clara, State of California, the crime of GRAND THEFT OF PERSONAL PROPERTY OF A VALUE OVER NINE HUNDRED AND FIFTY DOLLARS, in violation of PENAL CODE SECTION 484-487(a), a Felony, was committed by JOHN W. BOONE who did unlawfully take personal property, cash, of a value exceeding nine hundred and fifty dollars ($950.00), the property of Ricoh.

(NOPR) It is further alleged that in the commission and attempted commission of the offense(s) charged above the defendant JOHN W. BOONE, with the intent to do so, took, damaged and destroyed property of a value exceeding sixty-five thousand dollars ($65,000), within the meaning of Penal Code section 12022.6(a)(1).

## COUNT 4

On or about and between March 21, 2011 and April 8, 2011, in the County of Santa Clara, State of California, the crime of GRAND THEFT OF PERSONAL PROPERTY OF A VALUE OVER NINE HUNDRED AND FIFTY DOLLARS, in violation of PENAL CODE SECTION 484-487(a), a Felony, was committed by JOHN W. BOONE who did unlawfully take personal property, cash, of a value exceeding nine hundred and fifty dollars ($950.00), the property of Ricoh.

(NOPR) It is further alleged that in the commission and attempted commission of the offense(s) charged above the defendant JOHN W. BOONE, with the intent to do so, took, damaged and destroyed property of a value exceeding sixty-five thousand dollars ($65,000), within the meaning of Penal Code section 12022.6(a)(1).

## COUNT 5

On or about and between April 11, 2011 and April 20, 2011, in the County of Santa Clara, State of California, the crime of GRAND THEFT OF PERSONAL PROPERTY OF A VALUE OVER NINE HUNDRED AND FIFTY DOLLARS, in violation of PENAL CODE SECTION 484-487(a), a Felony, was committed by JOHN W. BOONE who did unlawfully take personal property, cash, of a value exceeding nine hundred and fifty dollars ($950.00), the property of Ricoh.

(NOPR) It is further alleged that in the commission and attempted commission of the offense(s) charged above the defendant JOHN W. BOONE, with the intent to do so, took, damaged and destroyed property of a value exceeding sixty-five thousand dollars ($65,000), within the meaning of Penal Code section 12022.6(a)(1).

## COUNT 6

On or about and between April 17, 2011 and May 3, 2011, in the County of Santa Clara, State of California, the crime of GRAND THEFT OF PERSONAL PROPERTY OF A VALUE OVER NINE HUNDRED AND FIFTY DOLLARS, in violation of PENAL CODE SECTION 484-487(a), a Felony, was committed by JOHN W. BOONE who did unlawfully take personal property, cash, of a value exceeding nine hundred and fifty dollars ($950.00), the property of Ricoh.

(NOPR) It is further alleged that in the commission and attempted commission of the offense(s) charged above the defendant JOHN W. BOONE, with the intent to do so, took, damaged and destroyed property of a value exceeding sixty-five thousand dollars ($65,000), within the meaning of Penal Code section 12022.6(a)(1).

## COUNT 7

On or about and between May 6, 2011 and May 18, 2011, in the County of Santa Clara, State of California, the crime of GRAND THEFT OF PERSONAL PROPERTY OF A VALUE OVER NINE HUNDRED AND FIFTY DOLLARS, in violation of PENAL CODE SECTION 484-487(a), a Felony, was committed by JOHN W. BOONE who did unlawfully take personal property, cash, of a value exceeding nine hundred and fifty dollars ($950.00), the property of Ricoh.

(NOPR) It is further alleged that in the commission and attempted commission of the offense(s) charged above the defendant JOHN W. BOONE, with the intent to do so, took, damaged and destroyed property of a value exceeding sixty-five thousand dollars ($65,000), within the meaning of Penal Code section 12022.6(a)(1).

## COUNT 8

On or about and between May 16, 2011 and May 23, 2011, in the County of Santa Clara, State of California, the crime of GRAND THEFT OF PERSONAL PROPERTY OF A VALUE OVER NINE HUNDRED AND FIFTY DOLLARS, in violation of PENAL CODE SECTION 484-487(a), a Felony, was committed by JOHN W. BOONE who did unlawfully take personal property, cash, of a value exceeding nine hundred and fifty dollars ($950.00), the property of Ricoh.

(NOPR) It is further alleged that in the commission and attempted commission of the offense(s) charged above the defendant JOHN W. BOONE, with the intent to do so, took, damaged and destroyed property of a value exceeding sixty-five thousand dollars ($65,000), within the meaning of Penal Code section 12022.6(a)(1).

## COUNT 9

On or about and between May 31, 2011 and June 9, 2011, in the County of Santa Clara, State of California, the crime of GRAND THEFT OF PERSONAL PROPERTY OF A VALUE OVER NINE HUNDRED AND FIFTY DOLLARS, in violation of PENAL CODE SECTION 484-487(a), a Felony, was committed by JOHN W. BOONE who did unlawfully take personal property, cash, of a value exceeding nine hundred and fifty dollars ($950.00), the property of Ricoh.

(NOPR) It is further alleged that in the commission and attempted commission of the offense(s) charged above the defendant JOHN W. BOONE, with the intent to do so, took, damaged and destroyed property of a value exceeding sixty-five thousand dollars ($65,000), within the meaning of Penal Code section 12022.6(a)(1).

### COUNT 10

On or about and between June 14, 2011 and June 20, 2011, in the County of Santa Clara, State of California, the crime of GRAND THEFT OF PERSONAL PROPERTY OF A VALUE OVER NINE HUNDRED AND FIFTY DOLLARS, in violation of PENAL CODE SECTION 484-487(a), a Felony, was committed by JOHN W. BOONE who did unlawfully take personal property, cash, of a value exceeding nine hundred and fifty dollars ($950.00), the property of Ricoh.

(NOPR) It is further alleged that in the commission and attempted commission of the offense(s) charged above the defendant JOHN W. BOONE, with the intent to do so, took, damaged and destroyed property of a value exceeding sixty-five thousand dollars ($65,000), within the meaning of Penal Code section 12022.6(a)(1).

### COUNT 11

On or about and between June 28, 2011 and July 7, 2011, in the County of Santa Clara, State of California, the crime of GRAND THEFT OF PERSONAL PROPERTY OF A VALUE OVER NINE HUNDRED AND FIFTY DOLLARS, in violation of PENAL CODE SECTION 484-487(a), a Felony, was committed by JOHN W. BOONE who did unlawfully take personal property, cash, of a value exceeding nine hundred and fifty dollars ($950.00), the property of Ricoh.

(NOPR) It is further alleged that in the commission and attempted commission of the offense(s) charged above the defendant JOHN W. BOONE, with the intent to do so, took, damaged and destroyed property of a value exceeding sixty-five thousand dollars ($65,000), within the meaning of Penal Code section 12022.6(a)(1).

### COUNT 12

On or about and between July 18, 2011 and August 1, 2011, in the County of Santa Clara, State of California, the crime of GRAND THEFT OF PERSONAL PROPERTY OF A VALUE OVER NINE HUNDRED AND FIFTY DOLLARS, in violation of PENAL CODE SECTION 484-487(a), a Felony, was committed by JOHN W. BOONE who did unlawfully take personal property, cash, of a value exceeding nine hundred and fifty dollars ($950.00), the property of Ricoh.

(NOPR) It is further alleged that in the commission and attempted commission of the offense(s) charged above the defendant JOHN W. BOONE, with the intent to do so, took, damaged and destroyed property of a value exceeding sixty-five thousand dollars ($65,000), within the meaning of Penal Code section 12022.6(a)(1).

### COUNT 13

On or about and between December 31, 2010 and August 1, 2011, in the County of Santa Clara, State of California, the crime of FORGERY OF INSTRUMENT OTHER THAN A CHECK, MONEY ORDER, ETC., in violation of PENAL CODE SECTION 470(d), a Felony, was committed by JOHN W. BOONE who did with the intent to defraud, falsely make, alter, forge, and counterfeit, a(n) due bill for payment of money or property, and utter, publish, pass, attempt to pass and offer to pass, as true and genuine, a(n) due bill for payment of money or property, knowing it to be false, altered, forged, and counterfeited.

### COUNT 14

On or about and between December 31, 2010 and August 1, 2011, in the County of Santa Clara, State of California, the crime of USING PERSONAL IDENTIFYING INFORMATION WITHOUT AUTHORIZATION, in violation of PENAL CODE SECTION 530.5(a), a Felony, was committed by JOHN W. BOONE who did willfully obtain personal identifying information, the name of GoGrid, and used the information for an unlawful purpose, including to obtain, and attempt to obtain, credit, goods, services, real property, and medical information, in the name of GoGrid without his or her consent.

### COUNT 15

On or about and between June 20, 2012 and October 12, 2012, in the County of Santa Clara, State of California, the crime of PREPARING FALSE DOCUMENTARY EVIDENCE, in violation of PENAL CODE SECTION 134, a Felony, was committed by JOHN W. BOONE who did prepare a false and antedated book, paper, record, instrument in writing and other matter and thing, with the intent to produce it and allow it to be produced for a fraudulent and deceitful purpose, as genuine and true, upon a trial, proceeding and inquiry authorized by law.

Any defendant, including a juvenile, who is convicted of and pleads guilty and no contest to any felony offense, including any attempt to commit the offense, charged in this complaint or information is required to provide buccal swab samples, right thumbprints and a full palm print impression of each hand, and any blood specimens or other biological samples required pursuant to the DNA and Forensic Identification Database and Data Bank Act of 1998 and Penal Code section 296, et seq.

Pursuant to Penal Code Section 1054 through 1054.7, inclusive, the People request that, within 15 days, the defendant and/or his/her attorney disclose:  (A) The names and addresses of persons, other than the defendant, he/she intends to call as witnesses at trial, together with any relevant written or recorded statements of those persons, or reports of the statements of those persons, including any reports or statements of experts made in connection with the case, and including the results of any physical or mental examinations, scientific tests, experiments, or comparisons which the defendant intends to offer as evidence at the trial.  (B) Any real evidence which the defendant intends to offer in evidence at the trial.  This request is a continuing request, to cover not only all such material currently in existence, but all material which comes into existence to the conclusion of this case.

Jeffrey F. Rosen
District Attorney

By _____

Jennifer Deng
Deputy District Attorney